CHARLES Y. MESERVE & another *vs.* JOHN S. ANDREWS.

A. underlet part of his shop to B., who carried on therein a trade in merchandise called the gift-enterprise business. Afterwards they agreed that A. should assist B. in his business, and B. should assume the whole rent, furnish the capital and defray all the expenses, and pay A. one fourth of the net profits for his services. *Held*, that, in computing these profits, allowance was to be made in B.'s favor for a loss by fire of part of his stock in trade; but not for money spent by him, without conference or coöperation with A., in defending himself against a criminal prosecution for carrying on the business, which did not arise or grow out of A.'s acts or doings, or the acts or doings of anybody with A.'s knowledge or consent.

CONTRACT. After the decision reported 104 Mass. 360, the case was recommitted to the auditor, who made the following report, to which he annexed an account computed as therein stated:

"The plaintiffs were pawnbrokers, and for several years were lessees of a shop numbered 108 on Sudbury Street in Boston; and the defendant, who was engaged in the gift-enterprise business, as it is called, with their permission occupied a part of the shop. For this occupation he settled and paid down to January 1, 1865. He continued to occupy to March 1, 1865, eight weeks and a half. For this he has not paid. As he paid at his last settlement on January 1, at the rate of three dollars per week, and as there was no satisfactory proof of a new contract, or of a material change of occupancy, I have charged him for the eight and a half weeks, at the rate of three dollars per week.

"In February 1865 a new arrangement was made. The plaintiffs agreed after March 1 ensuing to assist the defendant in carrying on his said business, and to allow him to occupy a larger part of the shop. And the defendant agreed to pay the entire rent of the shop, except what should be paid by one Foster, the tenant of another part; to furnish the necessary capital; to defray all expenses incident to said business; and, as compensation for the assistance to be rendered by the plaintiffs, to pay them one quarter of the net profits of the business. The plaintiffs were to carry on their business as pawnbrokers, in the same shop. Pursuant to this agreement, the defendant was allowed to occupy such part of the shop as he chose, and the plaintiffs rendered such assistance in the management of the gift-enterprise business of

the defendant as they were required to render. They expended money in fitting the shop for the defendant's better accommodation, and purchased and paid for sundry articles of shop furniture for use in his said business, and paid certain expenses necessarily incurred in the prosecution thereof. On April 30, 1865, the shop was burned, and with it were consumed certain articles of shop furniture and goods, which were a part of the defendant's stock in trade, and were used in his said business. On May 1, the plaintiffs procured another shop numbered 85 on the same street, and on that day both parties moved into it. In this shop the defendant continued carrying on his said business, with the plaintiffs' assistance, till May 15, when he removed to a shop on Court Street, and notified the plaintiffs that he had dissolved his connection with them.

" Upon all the evidence, I find that the net profits of the defendant's said business during the months of March and April were $1200 ; and that during the first fifteen days of May there were no profits and no losses.

" In March, a criminal prosecution was commenced against the defendant for carrying on his said business. He employed counsel, and expended considerable sums of money in his defence. In the course of the following year the proceeding was determined in his favor. There was no proof that the plaintiffs took any part in the defence, or were consulted about it, or undertook to be responsible for any part of the expenses. Nor did it appear in evidence that the criminal procedure arose or grew out of the acts or doings of the plaintiffs, or the acts or doings of anybody with their knowledge or consent. But had the prosecution resulted adversely to the defendant, he would probably have abandoned his said business.

" In ascertaining the net profits of the said business of the defendant, I have not taken into account the loss which he sustained as aforesaid by the fire, nor the moneys which he expended in his defence. The plaintiffs called on the defendant for a settlement, before instituting this suit."

Upon the return of this report, the parties submitted the case to the judgment of the superior court under an agreement " that

the above report be taken as an agreed statement of facts, and if the court should be of opinion that the loss of the defendant by fire, or the sums expended by him, or any part thereof, in defending against prosecution, mentioned in the said report, ought to be deducted from the profits of the business reported by the auditor, then the case is to be recommitted to ascertain their losses and sums paid." The superior court ordered judgment for the plaintiffs without any deduction for either of the causes specified in the agreement, and the defendant appealed.

*J. F. Pickering*, for the plaintiffs.

*J. G. Abbott*, for the defendant.

WELLS, J. This case, having been sent back for a more complete statement, (104 Mass. 360,) comes up again upon the amended report of the auditor as an agreed statement of facts.

1. As to the costs and expenses of the criminal prosecution commenced against the defendant for carrying on his business, which was subsequently determined in his favor, the report now states : " There was no proof that the plaintiffs took any part in the defence, or were consulted about it, or undertook to be responsible for any part of the expenses. Nor did it appear in evidence that the criminal procedure arose or grew out of the acts or doings of the plaintiffs, or the acts or doings of anybody with their knowledge or consent." The report fails, therefore, to show that the plaintiffs were in any way chargeable for those costs and expenses ; or that the prosecution was other than a mere personal affair of the defendant. It is not enough that it had reference to the carrying on of a certain kind of business by him ; or that, as the report further states, " had the prosecution resulted adversely to the defendant, he would probably have abandoned his said business." That alone does not show that the prosecution was a matter of joint concern ; or that it should affect the profits of the business while it was carried on. The finding of the auditor upon this point is therefore affirmed.

2. As to the loss by fire, it now appears that the loss was of " certain articles of shop furniture and goods, which were a part of the defendant's stock in trade, and were used in his said business ; " the business being designated as the " gift-enterprise "

business.   We suppose the "gift-enterprise" to be some mode of conducting trade in merchandise.   The profit and loss of trade in merchandise is not confined to that which results from sales. Depreciation or advance in value of the stock unsold must also be taken into account.   Depreciation may come from fluctuation of prices in the market, from deterioration in quality, or diminution in quantity, occasioned by the numerous causes incident to the business; among which, in our opinion, fire is to be included. Loss by fire, whether of goods constituting part of the stock in trade, or of shop furniture, should be deducted in making up the net profits for division.

The case will accordingly be recommitted for correction of the report in this particular; unless the amount of such correction shall be agreed on; and judgment will then be rendered for the amount thus found to be due, if anything.

*Ordered accordingly.*