CROWLEY ET AL., APPELLANTS, *v.* RORVIG, RESPONDENT.

(No. 4,481.)

(Submitted September 23, 1921.  Decided November 3, 1921.)

[203 Pac. 496.]

*Real Property—Brokers—Sales Voidable, When—Public Policy.*

Real Estate Broker—Sale to Self Voidable—Public Policy.
  1.  A real estate broker intrusted with the privilege of selling the land of his principal, cannot sell to himself, and where he does so, the sale made by him is voidable at the option of the owner.
Same—Sale to Wife Voidable—Public Policy.
  2.  Where under a contract made by defendant land owner with plaintiffs (two individuals and a corporation) jointly, which authorized them to sell his property at a fixed price on a commission basis, a sale made to four persons, two of whom were the wives of the individual plaintiffs, was voidable at defendant's option, the fact that the two other purchasers bore no relation whatever to such plaintiffs not altering the rule condemning the sale.

*Appeals from District Court, Broadwater County; John A. Matthews, Judge.*

ACTION by M. H. Crowley and others against Nick Rorvig.  From a judgment for defendant and an order refusing them a new trial, plaintiffs appeal.  Affirmed.

*Mr. James A. Walsh* and *Mr. Frank T. Hooks,* for Appellants, submitted a brief; *Mr. Walsh* argued the cause orally.

Respondent will undoubtedly cite a long list of cases holding that an agent cannot make a contract with his wife in matters affecting the agency.  These cases, commencing with the case of *Davoue* v. *Fanning,* 2 Johns. Ch. (N. Y.) 252, were based upon a rule that a wife did not have any legal existence apart from her husband, and that a husband and wife were unable to make a contract, and others will be where the husband was acting in a fiduciary capacity, exercising judgment and discretion.  The broad distinction between the

---

1.  Right of broker to purchase land listed with himself for sale, see notes in 78 Am. Dec. 211; Ann. Cas. 1912A, 202; 20 L. R. A. (n. s.) 1158.

present case and these cases, among other things, is principally this: That the instrument creating the agency fixed the price, terms and conditions of sale. The conditions of the agency, and the price, terms and conditions of sale all came into being at the same time. It cannot, therefore, be said that the agents had any influence in fixing the price, terms and conditions of sale. It is not alleged nor was it attempted to be proven that the defendant knew who were the purchasers, or that if he did know, that he knew that Stella G. Crowley and Mary D. Crowley, two of the purchasers, were wives of M. H. Crowley and W. E. Crowley. It is a bald attempt to escape a just liability on untenable technicality.

Section 3647 of the Revised Codes provides that husband and wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried. There are no exceptions to this rule and the plain provisions of the Code cannot be repealed by a court decision.

Under the plain provisions of the Code, a husband has no interest whatever in the property of his wife. She may sell or otherwise dispose of it in any manner that she may wish, without the consent of her husband. The only restriction in the disposition of property by a married woman is that she cannot deprive her husband of more than two-thirds of it by will. But during life, she may dispose of all of it without his consent. There is no community of interest whatever with reference to the wife's separate property. It is indeed far-fetched to say that the husband may possibly have an interest in the property, that she may not dispose of it before she dies, and that she may die before he does, and therefore he would be entitled to one-third of the property.

If the wife were the agent and sold the land to her husband, there might be some reason for holding that she thereby acquired an interest in the land, because she has a dower

interest in her husband's land, but her husband has no interest in her lands.

The question of the dealings between husband and wife is not involved in this case. The real party in interest in this case is the Logan Land Company. The authority to sell was given to the Logan Land Company. It shows that it was to M. H. and W. E. Crowley for the Logan Land Company. M. H. and W. E. Crowley were and are the managers of the company; M. H. Crowley, W. E. Crowley and Stella G. Crowley are stockholders; Stella G. Crowley is treasurer. It does not appear that she is even a director. It is not shown that Mary D. Crowley is in any way connected with the company, even as a stockholder. Hill and Burtch, two of the purchasers, are not related to the Crowleys, and are not connected with the Logan Land Company. Therefore, there is no legal reason why the Crowleys, as managers of the company should not sell this property to Hill and Burtch and to Mary D. Crowley and to Stella G. Crowley, the latter who is only a treasurer and stockholder of the corporation, and it is not shown, nor was it attempted to be shown, that she had anything to do with the management of the company. But even if she were a director, the contract would be valid.

It is not alleged, nor was it attempted to be proven that the Logan Land Company had any interest in the contract. There is no rule of law by which that company could claim any interest in the contract or in the land.

Stella G. Crowley is competent to enter into a contract in her own behalf, and having entered into a contract she is entitled to the benefit of it. (*Cuneo* v. *Giannini*, 40 Cal. App. 348, 180 Pac. 633; *Martinau* v. *Hanson*, 47 Utah, 549, 155 Pac. 432). It is not charged that the plaintiffs were guilty of any fraud, deceit or wrongdoing; hence the defendant was not in any way wronged. (*Herbert Kraft Co.* v. *Bryan*, 140 Cal. 73, 73 Pac. 745; *Synnott* v. *Shaughnessy*, 2 Idaho, 122, 7 Pac. 82.)

Plaintiffs had no influence in fixing price terms or conditions; the agency did not exist when the price terms and conditions were fixed by the defendant, and he alone fixed them, hence this case can be easily distinguished from cases where the agent could exercise discretion or where the principle relied upon the agent for information as to value. (*Copsey* v. *Sacramento Bank,* 133 Cal. 659, 85 Am. St. Rep. 238, 66 Pac. 7; *Sacramento Bank* v. *Copsey,* 133 Cal. 663, 85 Am. St. Rep. 242, 66 Pac. 8, see, also, on motion for rehearing, 66 Pac. 204.)

*Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

Section 5437 of the Revised Codes enjoins an agent from the doing of any act "which a trustee is forbidden to do by Article II, Chapter I of the last title," so that the authority of an agent is circumscribed by and with exactly the same limitations as that of a trustee, as found and contained in sections 5374 to 5385 of the Revised Codes. The settled rule which precludes an agent from selling the property of his principal to himself is equally applicable and controlling, as we shall presently show, where a sale is made to the agent's wife. (*Burke* v. *Bours,* 92 Cal. 108, 28 Pac. 57.) Nor does the fact that the price at which a sale may be made is fixed affect the relative rights and duties of the parties in the slightest particular. (4 Ruling Case Law, "Brokers," par. 25, p. 277; *Porter* v. *Woodruff,* 36 N. J. Eq. 174.)

Under a situation such as the one at bar, the plaintiff can neither purchase from nor sell to himself; and, what is more, he cannot so purchase from or sell to anyone who stands in such relation to him that it would place him in a position, "in which, to be honest, must be a strain on him." (*Porter* v. *Woodruff, supra; Reed* v. *Aubrey,* 91 Ga. 435, 44 Am. St. Rep. 49, 17 S. E. 1022; *Davoue* v. *Fanning,* 2 Johns. Ch. (N. Y.) 251.)

The rule which forbids an agent selling to his wife is not based upon the proposition, asserted by plaintiffs' counsel, that the wife has no "legal existence apart from her husband," but upon the ground that the same motives of self-interest which would operate to the disadvantage of the principal where the agent sells to himself would be equally operative in the making of a sale to the agent's wife. (*Tyler* v. *Sanborn,* 128 Ill. 136, 15 Am. St. Rep. 97, 4 L. R. A. 218, 21 N. E. 193.)

The laws of Kansas confer upon a married woman exactly the same rights and powers with reference to the making of contracts and the owning and holding of property as are conferred by the laws of Montana. The question involved in the case of *Frazier* v. *Jeakins,* 64 Kan. 615, 57 L. R. A. 575, 68 Pac. 24, was whether a sale made by a guardian to her husband, confirmed by the probate court, should be upheld. It was held that it could not be. To the same effect are: *McNutt* v. *Dix,* 83 Mich. 328, 10 L. R. A. 660, 47 N. W. 212; *Chastain* v. *Pender,* 52 Okl. 133, 152 Pac. 833; *Hay* v. *Long,* 78 Wash. 616, 139 Pac. 761; *Morgan* v. *Hardy,* 16 Neb. 427, 20 N. W. 337; *Hammond* v. *Bookwalter,* 12 Ind. App. 177, 39 N. E. 872; *Ruckman* v. *Bergholz,* 37 N. J. L. 437; *Dundas' Appeal,* 64 Pa. St. 325; 1 Clark & Skyles on Agency, par. 407.

The fact that two of the alleged purchasers, Hill and Burtch, are not related to the Crowleys, and are not connected with the Logan Land Company, does not make the contract a valid one. The same considerations which render the contract nugatory as to Stella G. Crowley and Mary D. Crowley render it equally invalid as to them. (*Robbins* v. *Butler,* 24 Ill. 387; *Tilleny* v. *Wolverton,* 46 Minn. 256, 48 N. W. 908; *Green* v. *Knoch,* 92 Mich. 26, 52 N. W. 80; *Finch* v. *Redding,* 154 Pa. St. 326, 26 Atl. 368; *Bedford etc. Coke Co.* v. *Parke County Coal Co.,* 44 Ind. App. 390, 89 N. E. 412.)

Under the settled law of agency, as laid down in and established by the cases and authorities herein cited and referred to, the pretended sale of the defendant's property is a nullity and void.

MR. COMMISSIONER SPENCER prepared the opinion for the court.

The facts essential to a determination of the appeals herein are that plaintiffs and defendant entered into a written agreement by the terms of which the plaintiffs engaged to sell certain lands of the defendant in Broadwater county for the fixed sum of $40,000, for a commission of five per cent. The instrument under which plaintiffs operated was designated "authority to sell." Subsequently the plaintiffs, assuming to act as agents of the defendant, entered into an agreement with Stella G. Crowley, Mary D. Crowley, Walter H. Hill, and Gilbert Burtch (hereinafter referred to as purchasers) whereby the purchasers agreed to buy the lands of defendant according to the terms of the authority to sell. Stella G. and Mary D. Crowley are the wives of M. H. and W. E. Crowley, respectively, and Stella G. Crowley is treasurer and M. H. and W. E. Crowley president and secretary of the Logan Land Company, the corporate agent. The other purchasers are strangers. Thereafter plaintiffs tendered to defendant contracts to be executed for the sale of the land to the purchasers in pursuance of the terms of their agency. The defendant did not examine the contracts, declined to sign them, and in fact refused to comply with the "authority to sell." The purchasers were ready, able and willing to buy upon the terms specified in their agreement. This action is for recovery of $2,000 claimed to be due as commission. Trial was had to the court with a jury, resulting in a directed verdict for defendant and judgment thereon. Motion for a new trial was denied, and appeal is from the judgment and order denying the motion.

The evidence is in conflict as to whether or not the authority to sell was revoked before plaintiffs made the agreement with the purchasers, but that fact is of little moment here, for these appeals involve primarily the question of the validity of that contract. Hence, assuming the fact of revocation to be most favorable to plaintiffs, was the contract between the agents (plaintiffs individually and the corporation) and the purchasers (two of whom were wives of the individual agents and one an officer of the corporate agent) a valid contract under the authority to sell?

If the question here involved the integrity of a contract [1] wherein the agents themselves became the purchasers, little difficulty would be encountered in its solution. While this court has not heretofore been called upon to decide a like question, those in other jurisdictions have determined it and are substantially in accord in opposition to its validity, at the option of the principal. As illustrative of the conclusion that such a contract is voidable at the principal's option, and the reasons for the rule, we quote with approval the following from the supreme court of Nebraska: "In *Stettnische* v. *Lamb*, 18 Neb. 627, 26 N. W. 374, is this language: 'The rule is well settled that a party will not be permitted to purchase an interest in property, and hold it for his own benefit, where he has a duty to perform in relation thereto which is inconsistent with his character as a purchaser on his own account.' This statement was sustained by several authorities cited, and of its correctness there can be no doubt. In the light of adjudged cases and of the text-books, therefore, let us see what duty the plaintiffs in error had to perform towards the defendant in error in respect of the real property which was the subject matter of the agency between them. Upon this subject the following language is found in Pom. Eq. Jur., section 959: 'In dealings without the intervention of his principal, if an agent for the purpose of selling property for the principal purchases it himself, or an agent for the purpose of buying property for the principal

buys it from himself, either directly or through the instru-
mentality of a third person, the sale or purchase is voidable.
It will always be set aside at the option of the principal. The
amount of consideration, the absence of undue advantage,
or other similar features, are wholly immaterial. Nothing
will defeat the principal's right of remedy except his own
confirmation after full knowledge of all the facts.'

"In *Porter* v. *Woodruff*, 36 N. J. Eq., on page 179 *et seq.*,
the following language is found: 'The general interests of
justice, and the safety of those who are compelled to repose
confidence in others, alike demand that the courts shall
always inflexibly maintain the great and salutary rule which
declares that an agent employed to sell cannot make himself
the purchaser, nor, if employed to purchase, can he be himself
the seller. The moment he ceases to be the representative
of his employer, and places himself in a position towards his
principal where his interests may come in conflict with those
of his principal, no matter how fair his conduct may be in
the particular transaction, that moment he ceases to be that
which his service requires, and his duty to his principal
demands. He is no longer the agent, but an umpire. He
ceases to be the champion of one of the contestants in the
game of bargain, and sets himself up as a judge to decide
between his principal and himself what is just and fair. The
reason of the rule is apparent. Owing to the selfishness and
greed of our nature, there must, in the great mass of the
transactions of mankind, be a strong and almost ineradicable
antagonism between the interests of the seller and the buyer;
and universal experience has shown that the average man will
not, where his interests are brought in conflict with those
of his employer, look upon his employer's interest as more
important, and entitled to more protection, than his own.
In such cases the courts do not stop to inquire whether the
agent has obtained an advantage or not, or whether his
conduct has been fraudulent or not. When the fact is estab-
lished that he has attempted to assume two distinct and op-

posite characters in the same transaction, in one of which he acted for himself, and in the other pretended to act for another person, and to have secured for each the same measure of advantage that would have been obtained if each had been represented by a disinterested and loyal representative, they do not pause to speculate concerning the merits of the transaction—whether the agent has been able so far to curb his natural greed as to take no advantage—but they at once pronounce the transaction void because it is against public policy. The salutary object of the principle is not to compel restitution in case fraud has been committed, or an unjust advantage gained, but to elevate the agent to a position where he cannot be tempted to betray his principal. Under a less stringent rule, fraud might be committed, or unfair advantage taken, and, yet, owing to the imperfections of the best of human institutions, the injured party be unable either to discover it, or prove it in such a manner as to entitle him to redress. To guard against this uncertainty, all possible temptation is removed, and the prohibition against the agent acting in a dual character is made broad enough to cover all his transactions. The rights of the principal will not be changed, nor the capacities of the agent enlarged, by the fact that the agent is not invested with a discretion, but simply acts under an authority to purchase a particular article at a specified price, or to sell a particular article at the market price. No such distinction is recognized by the adjudications, nor can it be established without removing an important safeguard against fraud. (*Benson* v. *Heathorn,* 1 Younge & C. 326; *Conkey* v. *Bond,* 34 Barb. 276, 36 N. Y. 427.)'

"In *Ruckman* v. *Bergholz,* 37 N. J. L. 440, is found the following language: 'The judge, distinguishing this case from one where the price was left open to the negotiations of the agent, instructed the jury that, though the plaintiff was interested in the purchase when it was made, he might, nevertheless, recover his commissions as agent, notwithstanding the defendant was not aware of the existence of such

interest. In this there was error, for it is a fundamental rule that an agent employed to sell cannot himself be a purchaser, unless he is known to his principal to be such. (Dunl. Paley, Ag. 33; Story, Ag., sec. 210; and other cases cited.) And this rule is not inapplicable, nor is it relaxed, when the employment is to sell at a fixed price, for it springs from the prohibitory policy of the law, adopted to prevent the abuse of confidence, and to remove temptation to duplicity. It requires a man to put off the character of agent when he assumes that of principal.' Mechem, Ag., in section 455, states the rule as follows: 'The agent will not be permitted to serve two masters without the intelligent consent of both. As is said by a learned judge, so careful is the law guarding against the abuse of fiduciary relations that it will not permit an agent to act for himself and his principal in the same transaction, as to buy of himself, as agent, the property of his principal, or the like. All such transactions are void, as it respects the principal, unless ratified by him with a full knowledge of all the circumstances. To repudiate them, he need not show himself damnified. Whether he has been or not, is immaterial. Actual inquiry is not the principle the law proceeds upon in holding such transactions void. Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit the agent to place himself in a situation in which he might be tempted by his own private interest to disregard that of his principal.' (Citing *People* v. *Township,* 11 Mich. 222.) 'This doctrine, to speak again the beautiful language of another, has its foundation, not so much in the commission of actual fraud as in that profound knowledge of the human heart which dictated that hallowed petition, "Lead us not into temptation, but deliver us from evil," and that caused the announcement of the infallible truth, "A man cannot serve two masters." '

"These quotations we shall properly close with the language of Story, Ag., section 210, quoted, with the approval of this court, in *Englehart* v. *Plow Co.,* 21 Neb. 48, 31 N. W. 391;

'In this connection, also, it seems proper to state another rule in regard to the duties of agents, which is of general application, and that is that, in matters touching the agency, agents cannot act so as to bind their principals where they have an adverse interest in themselves. This rule is founded upon the plain and obvious considerations that the principal bargains in the employment for the exercise of the disinterested skill, diligence, and zeal of the agent for his own exclusive benefit. It is a confidence necessarily reposed in the agent, that he will act with a sole regard to the interests of his principal, as far as he lawfully may; and even if impartiality could possibly be presumed on the part of the agent, where his own interests are concerned, that is not what the principal bargains for, and in many cases it is the very last thing which would advance his interest. If, then, a seller were permitted, as an agent of another, to become the purchaser, his duty to his principal and his own interest would stand in direct opposition to each other, and thus a temptation, perhaps in many cases too strong for resistance by men of flexible morals, or hackneyed in the common device of worldly business, would be held out, which would betray them into gross misconduct, and even into crime. It is to interpose a preventive check against such temptations and seductions that a positive prohibition has been found to be the soundest policy, encouraged by the purest precepts of Christianity.' '' (*Jansen* v. *Williams,* 36 Neb. 869, 20 L. R. A. 207, 55 N. W. 279; 4 R. C. L., sec. 25, pp. 276, 277; *Burke* v. *Bours,* 92 Cal. 108, 28 Pac. 57; *Reed* v. *Aubrey,* 91 Ga. 435, 44 Am. St. Rep. 49, 17 S. E. 1022; *Tyler* v. *Sanborn,* 128 Ill. 136, 15 Am. St. Rep. 97, 101, 4 L. R. A. 218, 21 N. E. 193; also, *Rodman* v. *Manning,* 53 Or. 336, 20 L. R. A. 1158, 99 Pac. 657, 1135; *Kingsley* v. *Wheeler,* 95 Minn. 360, 104 N. W. 543, 544.)

But as opposed to the rule that an agent intrusted with the privilege of selling his principal's property cannot become the purchaser, counsel for appellants rely upon *Martineau* v.

*Hanson*, 47 Utah, 549, 155 Pac. 432, *Cuneo* v. *Giannini*, 40 Cal. App. 348, 180 Pac. 633, *Herbert Kraft Co.* v. *Bryan*, 140 Cal. 73, 73 Pac. 745, and *Copsey* v. *Sacramento Bank*, 133 Cal. 659, 85 Am. St. Rep. 238, 66 Pac. 7, 8, 204 (two cases). Modification of the general rule, however, does not find support in these cases, but rather are they authority for a well-defined exception within which the instant case is not included. In *Martineau* v. *Hanson, supra,* the contract of agency provided that the broker might retain as his commission all he received over a specified sum net to his principal. The court said: "It should be remembered that in this case the defendant fixed his own price for the lands in question, and the plaintiff's commission was made dependent entirely upon whether he could find a purchaser who was willing and able to pay more than the price fixed by the defendant. If the plaintiff found such a purchaser, then he was entitled to whatever sum he realized for the lands in excess of defendant's price. In what way could it have affected the defendant, therefore, if it were found that the plaintiff advanced any part of the purchase price, and for doing so was given some interest in the lands, or that he obtained some interest therein as purchaser? True it is, as we have already pointed out, that if the plaintiff misrepresented the purchaser's financial ability to pay for the lands, and that he thereby misled the defendant and induced him to enter into the contract of sale, so that plaintiff might obtain the commission, and for that reason was given the note in question, he could not recover in this action. But that is entirely a different proposition from the one insisted upon by the defendant, namely, that under no circumstances may a broker be interested, either directly or indirectly with the purchaser. Under the contract of employment in this case, if the defendant received the price fixed by him for his lands, it was entirely immaterial to him how, or through what sources the purchaser obtained the money or means to pay therefor. Nor was he interested in the question of who

purchased, except to the extent that such purchaser was financially able to pay for the lands. The question here is somewhat akin to the question passed on in *Neighbor* v. *Pacific Realty Assn.*, 40 Utah, 610, Ann. Cas. 1914D, 1200, 124 Pac. 523, where the exception to the general rule that a broker may not be interested in the lands purchased or sold is pointed out. So as not to be misunderstood upon the question just discussed, we repeat that the foregoing statements are based upon the express condition that the plaintiff acted in good faith, and did not, by false representations, induce the defendant to enter into a contract of sale with Mr. Earl for the purpose merely of obtaining the commission, regardless of the financial ability of said Earl to pay the purchase price." (*Martineau* v. *Hanson*, 47 Utah, 549, 155 Pac. 432, 434.)

The same exception is recognized in 4 R. C. L., section 25, pages 277, 278. *Herbert Kraft Co.* v. *Bryan, supra,* presents a condition wherein trustees named in a trust deed sold property of the principal to a corporation of which they were stockholders and directors. The trust deed specifically authorized the corporation to become a purchaser at the sale. The court disposed of the contention that the sale was void as follows: "The claim that the sale was void rests solely upon the naked fact that the two trustees who made the sale were stockholders and directors of the corporation, and that this fact, *ipso facto,* and without any further showing, rendered the sale void. This position is not tenable. The plaintiff occupied no fiduciary relation to the trustees, and as holder of the debt secured had, under the express terms of the deed, the right to purchase at the sale. The two trustees, being stockholders and directors of the corporation, had some relation to and interest in its affairs; but that relation does not bring the case at bar within the principle that a sale by a trustee to himself is absolutely void. The purchase was not made by or for the trustees, but by the corporation for itself, and the seller and purchaser were not the same

person. A sale of property by a director to his corporation is not void. Moreover, the rule invoked is much relaxed as to mortgages and deeds of trust with power to sell, given as security for loans. The mortgagee himself may be the trustee to sell under the mortgage. It seems clear that a sale like the one involved in the case at bar is not void; and, if it could be considered as voidable, it could be avoided only upon the showing of some injury not here averred. As plaintiff was the highest bidder, it is difficult to see how the trustees could have refused to accept the bid without violating their duty to the trustors. However, further discussion of the point is unnecessary, because it is determined against the contention of appellant in the recent case of *Copsey* v. *Sacramento Bank,* 133 Cal. 665, 85 Am. St. Rep. 242, 66 Pac. 8, 205, where authorities sustaining the foregoing views are cited. We do not see how the fact that in the *Copsey Case* the debt was due originally to the corporation of which the trustees were directors can make any difference in the application of the principle.'' (*Herbert Kraft Co.* v. *Bryan,* 140 Cal. 73, 73 Pac. 745.)

In *Cuneo* v. *Giannini, supra,* the court apparently distinguishes between a ''family corporation'' and corporations generally, and in that case, the action of a majority of the board of directors of that family corporation, in which defendant's wife was a director, was not disturbed. The apparent confusion in the decided cases involving the question under discussion disappears under analysis, and the authorities are harmonious in holding the agent to that high degree of skill and fidelity in his principal's behalf which requires that his best efforts shall result to the advantage of his principal, thereby excluding the theory that he may occupy the inconsistent position of both seller and buyer, except in the instances herein mentioned, and vindicates the law's intolerance of any suggestions that the agent may serve two masters. (*Northwestern Nat. Bank of Great Falls* v. *Great Falls Opera House Co. et al.,* 23 Mont. 1, 10, 11, 57 Pac. 440.)

But under the general rule, since the agent himself cannot [2] become the purchaser at the sale of his principal's property, may he avoid the penalty of the law by a sale to his wife? We think not. The salutary design which forms a basis for the rule in the former applies alike in the latter instance. The supreme court of Georgia elucidates the rule as follows: "The law is well settled that an agent to sell land cannot himself become the purchaser, unless the owner, with a full knowledge of all the facts, consents thereto. The principle which renders an agent incompetent to purchase from himself renders him alike incompetent to sell to his wife. As he is forbidden to purchase that which another has intrusted him to sell, for the reason that the temptation to take care of himself will override the duty he owes to his principal, it requires no great amount of reflection to perceive that he will ordinarily be influenced by the same motive in selling to his wife. It is hardly possible for a wife to make an advantageous contract of any kind without more or less benefit therefrom resulting to the husband. In this sense, as in many others, 'the twain are one flesh,' and the selfishness and desire for gain common to most mortals makes it expedient to prevent a husband and wife dealing between themselves with the property of another of which the husband has charge in a fiduciary capacity. A very strong and well-reasoned case in support of the above doctrine is that of *Tyler* v. *Sanborn,* 128 Ill. 136, 15 Am. St. Rep. 97, [4 L. R. A. 218, 21 N. E. 193], in which it was held that a purchase by a wife of land for the sale of which her husband was agent, with notice of his agency, will be set aside as fraudulent at the instance of his principal, who had no notice as to who was the purchaser, although there was no fraud in fact, and the wife purchased against the remonstrance of her husband, and paid for the property out of her separate estate. * * * This sale was afterward set aside at the instance of the owners, as fraudulent in law against them, although the conduct of both the agent and his wife

was absolutely free from all fraud in fact. This decision carries the doctrine announced in the case at bar to a very considerable length, and two of the seven justices dissented; but it serves to show that the law in cases of this kind has been, and should be, very strictly enforced. The fact that in Illinois the husband is entitled to dower in the real estate of the wife undoubtedly contributed to some extent to the conclusion reached. We have no such law in Georgia, but no one can doubt that a husband has practically a beneficial, though not a legal, interest in the property of his wife. Reference is here made to the authorities cited in the case just mentioned, and also to *Davoue* v. *Fanning,* 2 Johns. Ch. (N. Y.) 251, an examination of which will throw some light upon the question under consideration.'' (*Reed* v. *Aubrey,* 91 Ga. 435, 44 Am. St. Rep. 49, 17 S. E. 1022.)

The above quotations are an adoption of the principle enunciated by Chancellor Kent in *Davoue* v. *Fanning,* decided in 1816, and reported in 2 Johns. Ch. (N. Y.) 251. Kansas, with statutes commonly called emancipation statutes, similar to those of Montana, disposes of the question involving the invalidity of a sale by the agent to his wife thus: ''It is true that the common-law fiction of the legal identity of the husband and wife, and the very nearly complete merger of the latter in the former, does not now have recognition. In this state, as allowed by statute, the wife may contract with her husband. They may own separate estates, free from any present claim of interest by one in the property of the other —that is, as against the other—but it is not true that as to their respective possessions they are strangers in such a sense as to take a trustee's sale by one to the other from out the operation of the rule in question. Upon the death of either of them one-half of his or her property descends under the statute to the survivor, and under the statute neither one, without the other's consent, can, by will, devise more than one-half his or her property. It is true the interest of the one in the property of the other is contingent and uncertain,

and dependent on survivorship. It is true that the interest of the one in the land of the other is not of the character of any of the estates known to the common law, but it nevertheless possesses the elements of property. This was distinctly so ruled in *Busenbark* v. *Busenbark,* 33 Kan. 572, 7 Pac. 245, and on the strength of the quality of property attaching to the inchoate interest of a wife in her husband's land she was allowed in that case to maintain an action to prevent its fraudulent alienation. However, over and beyond that property interest which husband and wife have in each other's estate, and which possesses the element of pecuniary value, there is a larger consideration. It was well expressed by counsel for defendant in error, who said: 'The affection existing between husband and wife; the marital relation, which in a sense makes them one; the implicit confidence which each must have in the other; their natural desire for each other's material prosperity; the relation which enables one to derive and enjoy personal comfort and pleasure from the property of the other, independent of the question of direct or indirect ownership in such property—are all so well recognized in law and understood by all civilized people that it would be arguing against the experience of centuries to contend that one would not be interested in the welfare of the other, and do all that could be done to enhance the pecuniary interests of the other. Therefore, by reason of the relation, no guardian could be impartial in the sale to husband or wife of the property of the ward.' " (*Frazier* v. *Jeakins,* 64 Kan. 615, 57 L. R. A. 575, 68 Pac. 24.)

And hence it is to be observed that the same stamp of universal disapproval is impressed upon a sale to the wife as to the husband, as agent.

That two of the purchasers were strangers in the transaction to the selling agents, and bore no business, kindred or other relation toward them, does not alter the rule. This finds

support in *Robbins* v. *Butler,* 24 Ill. 387, and *Tilleny* v. *Wolverton,* 46 Minn. 256, 48 N. W. 908.

The plaintiffs in this action are M. H. Crowley and W. E. Crowley, individually, and the Logan Land Company, a corporation. The complaint alleges that the defendant employed the plaintiffs (not severally but jointly) to make sale of certain lands described in the "authority to sell," and by reason thereof we are not called upon to decide the question as to whether or not the rule would be other than as herein expressed, were the Logan Land Company alone the selling agent and the only plaintiff in this action, and the contract of sale made with an officer or stockholder of that company.

Supplementing all of the foregoing discussion is section 5437, Revised Codes of our own state, which attaches certain limitations upon the powers of trustees to those of an agent, and in substance and spirit are all in accord with the views expressed herein. (Rev. Codes, secs. 5437, 5374–5385.) Hence, as our conclusion, we hold that the contracts of sale tendered by plaintiffs to defendant were voidable at his option, and that he exercised that option by refusing to execute the same.

For the reasons herein expressed, we recommend that the judgment and order appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

*Affirmed.*