C. J. IVERSON and MABEL M. IVERSON, also Known as MABEL IVERSON, His Wife, Plaintiffs and Appellants, v. SHEBAL REHAL, also Known as SHEBAL REHAL, Trustee, et al., Defendants and Respondents.

No. 9582.

Submitted September 11, 1957. Decided November 14, 1957.

317 Pac. (2d) 869.

Messrs. Swanberg & Swanberg and Mr. Ray F. Koby, Great Falls, for appellant.

Messrs. Aronow & Hoyt, Shelby, for respondent.

Mr. Randall Swanberg and Mr. Cedor B. Aronow argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment and decree quieting title to approximately 320 acres in Liberty County, Montana, in the appellants, hereinafter called plaintiffs, subject, among other things, to certain landowners' oil and gas royalties found and concluded by the court to be owned by certain of the respondents, hereinafter called defendants. The decree found and concluded, in conformity with the allegations of plaintiff's complaint, that 6 5/16 percent of the landowners' royalties were held in named

persons in various amounts. There is no contest in this case as to this 6 5/16 percent landowners' royalty.

In addition to the aforementioned landowner royalty owners, the trial court further found that 4 7/16 percent of the landowners' royalty was held and owned by the defendants, as follows:

Shebal Rehal, also known as Shebal Rehal, Trustee—15/16ths of 1 percent.

Cedor B. Aronow—½ of 1 percent.

J. H. McCourt—1 percent.

Norman Walters and F. H. Martin—1 percent.

A. E. McDonald and Phyllis McDonald—1 percent.

Plaintiffs' complaint was the usual short form quiet title complaint. Defendants' answer set forth the claims of defendants as owners of landowners' royalty in the premises involved, in the amounts above set forth. The answer further pleaded as separate defenses and cross-complaints: (1) that defendants were innocent purchasers for value of the above set forth royalties; (2) that the plaintiffs were barred by laches; and (3) that the plaintiffs were barred by the statute of limitations. The plaintiffs' amended reply pleaded that the defendants claimed title through a trust agreement and royalty assignment of the defendant, Shebal Rehal, with one H. S. Blevins, and an extension of the agreement; that the agreement was satisfied and canceled; that upon the execution and recording of the document satisfying and canceling the agreement, Shebal Rehal was divested of any title to the oil royalties assigned to him by H. S. Blevins. As a second separate defense, the amended reply alleged that if the defendant, Shebal Rehal, was not divested of title to the royalties, the same were retained by Rehal through his fraudulent representations to the aforementioned Blevins, that the trust agreement was terminated by execution of the plaintiffs' satisfaction and cancellation document; and that nothing further was required of the parties to restore the unconveyed royalty interest remaining to H. S. Blevins.

The specifications of error on this appeal bring forth the

question of the legal effect of four instruments which were introduced as exhibits and referred to as plaintiffs' Exhibits D, E. F, and G, all of which were recorded in the office of the clerk and recorder of Liberty County. The foregoing exhibits may be summarized as follows: Plaintiffs' Exhibit D: Agreement between H. S. Blevins and Shebal Rehal, trustee, dated, acknowledged and recorded June 21, 1927, wherein Blevins agreed to assign 5 percent royalty to Rehal, Trustee, and Rehal agreed to endeavor to dispose of 2 percent of the royalty at 50 cents per acre for 1 percent within 90 days from date of agreement, applying the proceeds to liquidate $207.95 delinquent taxes and paying any balance to Blevins. The remaining 3 percent to be sold by Rehal at 75 cents per acre for one percent within six months from date of agreement, paying the proceeds to Blevins. The recited purpose of the agreement was to raise $1,000 to liquidate a certain indebtedness against the land.

Plaintiffs' Exhibit E: Assignment of Royalty from H. S. Blevins and Shebal Rehal, Trustee, dated, acknowledged and recorded June 21, 1927, of 5 percent landowners' royalty.

Plaintiffs' Exhibit F: Extension of Agreement between H. S. Blevins and Shebal Rehal, Trustee, dated, asknowledged and recorded December 9, 1927, extending the original agreement one year from date of the extension.

Plaintiffs' Exhibit G: Satisfaction of Agreement between H. S. Blevins and Shebal Rehal, Trustee, acknowledged September 25, 1929, recorded October 19, 1929, wherein plaintiffs' Exhibit D is declared canceled and the obligations contained therein declared as a nullity.

With the foregoing instruments in mind, the evidence in the record discloses the circumstances surrounding the instruments and the transactions of Blevins and Rehal relating thereto to be substantially as follows: Blevins received title to the premises from his aunt, Rosa Muckleroy, by deed dated June 21, 1927. On the same day the Blevins-Rehal agreement was executed. At the date Blevins acquired title, the premises were subject to a mortgage of the Muckleroys in favor of Barnes Brothers, In-

corporated, in the principal sum of $500, due October 1, 1925, with interest at 6 percent per annum from the date of October 4, 1920. This mortgage had been assigned to one Ann S. Williams in 1920. On March 1, 1928, while Rehal was trustee for Blevins for 4 7/16 percent of the 5 percent royalty which remained unsold at that date, Rehal purchased the aforementioned mortgage from the estate of Ann S. Williams for the sum of $350. As Rehal expressed it, and as apparently the trial court so believed, the purchase was made like this:

"Well, after the oil royalty was assigned to me, I was supposed to raise enough money to take up the mortgage and the taxes, and I couldn't sell any more than approximately $100 worth and it wasn't enough, and I told Blevins that I couldn't sell any more, but that I was going to try to buy the mortgage to protect him from foreclosure and also to protect the people that I sold the royalty to."

Some year and a half later, on September 5, 1928, after the trust agreement and extension had by their terms expired but without any formality terminating the trust agreement, Rehal told Blevins, the beneficiary, that he, Rehal, had to have some money on the mortgage. No more of the royalty could be sold at that time, although it appears in the record that Rehal diligently tried to sell the same. Blevins was apparently unable to pay the amounts owed against the land. By mutual agreement, Blevins agreed to run over the remainder of the unsold 5 percent royalty to Rehal and Rehal would call the debt square. This was done on September 25, 1929. At that time, the Exhibit D, previously set forth, was signed and acknowledged.

Thus, defendants' claim to their 4 7/16 percent landowners' royalty is founded upon these four instruments. No attack is or has been made on the afore-described transaction between themselves. The trial was had and the appeal made on the theory that the transaction created a trust, although it was suggested by counsel for defendants, during oral argument, that the transaction was an agency and not a trust in the strict

sense of the word. For the purpose of this opinion, it is not necessary for us to decide whether it was an agency or a trust.

On the other hand, the plaintiffs attack the transaction. Plaintiffs are the legal owners of title to the property except as to the royalty interest herein set out through mesne conveyances of the interest of the beneficiary. The record reveals that plaintiffs were always aware of the claim to landowners' royalty of the defendants. The question of whether or not plaintiffs are the proper parties to attack the transaction was never raised by either demurrer, answer or other pleading although the issue was raised by plaintiffs in their amended reply.

Plaintiffs contend, that as a matter of law, title to the 4 7/16 percent royalty claimed by defendants, and found and concluded by the trial court to be owned by defendants, was vested or revested in H. S. Blevins, and through mesne conveyances is now owned by plaintiffs.

A determination of the right of plaintiffs or defendants to the disputed royalty turns largely on the legal effect of the execution and recording of the satisfaction of agreement signed by Blevins and Rehal, declaring the Blevins-Rehal trust agreement "cancelled and obligations contained therein declared a nullity."

At the time this satisfaction of agreement was entered into, the purposes for which the trust was created had not been accomplished, apparently through no fault of anyone. Although the plaintiffs contend there was unfair advantage, bad faith, and overreaching of the beneficiary by the trusted, the trial court did not so find, and our review of the record reveals that there was no showing of bad faith by the trustee. Quite the contrary, the record indicates that so far as the beneficiary was concerned, the trustee did everything he could. The trust agreement provided that "at the expiration of the time as hereinabove stated, the remaining percentage of the five percent (5%) herein mentioned shall be reassigned to the said party of the first part.'" The beneficiary did not ask for a reassignment, although clearly the parties intended that it should be reassigned. The beneficiary

still owed more than he was able to pay. The trustee Rehal had purchased the mortgage, thereby saving the beneficiary from foreclosure, and held it for some eighteen months. The trustee had paid $350 for a mortgage on which about $770 was owing. The transaction was a discounted one, approved by the probate court so far as the seller was concerned as being the best price obtainable. The entire record disclosed that at the period of time in question, land values and royalty values were low.

The trustee had a duty to protect the trust property and the ▆ beneficiary. It is true that he did not take the assignment of the mortgage in the name of the trust or in the name of the beneficiary. Neither did he have any liquid trust assets with which to do so. He advanced his own money. Although the plaintiffs' brief repeatedly charges that this was in violation of his duties in his fiduciary capacity, the record simply does not indicate anything but a fair transaction with full disclosure between the trustee and the beneficiary. The beneficiary Blevins testified at the trial and although he hopelessly contradicted himself on some matters, a fair reading of the testimony discloses, and the trial judge so believed, that he was fully satisfied with the transaction at the time and remains so today, some twenty-five years later.

Thus, posed here is the question of whether or not under the ▆▆ facts of this case, the trustee could purchase the assets of the trust property during the period of trusteeship. This, of course, assumes that the title to the 4 7/16 percent royalty had not already by operation of law, revested in the beneficiary; a subject we will later discuss.

R.C.M. 1947, sections 86-301, through 86-326, cover the trustees duties and obligations. As hereinbefore stated no breaches of duties are shown by the record, unless it be said that a purchase by a trustee of trust property is void.

R.C.M. 1947, section 86-303, makes it clear that a trustee may under certain circumstances deal with the trust property. That section reads in part:

"Neither a trustee nor any of his agents may take part in any

transaction concerning the trust in which he or any one for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows:

"1. When the beneficiary, having capacity to contract, with full knowledge of the motives of the trustee, and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so * * *." See discussion in Crowley v. Rorvig, 61 Mont. 245, 203 Pac. 496.

We hold then that a sale or transfer of trust property to the trustee with full knowledge by the beneficiary at a fair price without influence is voidable only. See 90 C.J.S. Trusts, section 303, page 471, and cases cited.

In Horsky v McKennan, 53 Mont. 50, 56, 162 Pac. 376, 378, this court said:

"Upon the trial the plaintiff, to show title, established that on August 2, 1893, he was the owner of the premises in question; that on that day he made a deed of assignment thereof for the benefit of his creditors to Antone Horsky, and that on May 7, 1914, Antone Horsky reconveyed the same to him by formal deed, reciting, among other things, that 'the conditions, terms and trusts of said deed of assignment' had been completed and fulfilled. The sufficiency of this showing was challenged by a motion for nonsuit, and that challenge is renewed here upon the ground that without proof *aliunde* of full compliance with the conditions, terms, and trusts of the deed of assignment, the reconveyance had no probative value because, under section 4549, Revised Codes [1907, now R.C.M. 1947, section 86-114], every transfer or other act of the trustees of an express trust in relation to real property, in contravention of such trust, is absolutely void. This contention misplaces the burden of proof. Whether section 4549 be viewed alone and held, as in New York, to mean that such conveyances are absolutely void into whatever hands they come (Briggs v. Palmer, 20 Barb., N.Y., 392; Russell v. Russell, 36 N.Y. 581, 93 Am. Dec. 540), or considered in connection with provisions similar to section 5386 [Revised

Codes 1907, now R.C.M. 1947, section 86-313], and held, as in other states, to mean that such conveyances are voidable in the hands of a grantee with notice at the suit of the party aggrieved (note, 19 Am. St. Rep. 267, 297), it is perfectly clear that not all conveyances by such trustees are *prima facie* void or voidable. They are void or voidable only if made in contravention of the trust, and as this presumably is not the character of any given conveyance, the burden is necessarily upon him who asserts, to prove that such is its character.''

Under the circumstances related herein, the trustee obtained title to the 4 7/16 percent royalty interest upon execution of the satisfaction of agreement which declared the trust agreement ''cancelled and the obligations contained therein declared a nullity.''

One of the obligations contained in the agreement and the only one remaining to be performed at the time of the execution of the satisfaction of agreement was for the trustee to have reassigned the 4 7/16 percent royalty interest. This obligation was declared a ''nullity'' and the previously assigned legal title to the royalty interest then remained in the trustee personally.

The plaintiffs, insist that by operation of law at the expiration of the time of the trust agreement the title revested in the beneficiary. But where as here the trustee purchased a mortgage against the property to protect the beneficiary and the royalty purchasers, and held it for some eighteen months, the effect was to continue the fiduciary relationship.

As between the parties, the trust continued in existence. The beneficiary had an option to demand termination and reassignment of the royalties or to allow the relationship to continue. He chose the latter, and until the agreement was reached, title to the royalty remained in the trustee. By mutual agreement, as previously described, the trust was terminated, the mortgage satisfied, and the obligation of the trustee to reassign the royalty was declared a nullity, leaving the title to 4 7/16 percent royalty in the defendant Rehal.

The defendant Rehal through assignments conveyed various interests in the amounts set out hereinbefore to others.

Because of what has been heretofore said, other questions posed as to the effect of the statute of limitations, parties and laches need not be discussed.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ANGSTMAN, BOTTOMLY and ADAIR, concur.