No. 88-322

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

BOYNE, U.S.A., INC.,
           Plaintiff and Respondent,

   -vs-

NICHOLAS L. MALLAS, BRUCE FRANK and
THE MONTANA TERRITORIAL LAND CO., a
Montana corporation,
           Defendants and Appellants.

---

NICHOLAS L. MALLAS and BRUCE FRANK,
           Plaintiffs and Appellants,

   -vs-

BOYNE, U.S.A., INC., LONE PEAK, INC.,
BIG SKY, INC., and JOHN E. KIRCHER,
           Defendants and Respondents.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Thoma Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Edmund P. Sedivy, Jr.; Morrow, Sedivy & Bennett,
        Bozeman, Montana

    For Respondent:

        Stephen M. Barrett; Kirwan & Barrett, Bozeman,
        Montana

---

Submitted:  Dec. 2, 1988

Decided:  February 28, 1989

Filed:

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The defendants, Nick Mallas, Bruce Frank, and the Montana Territorial Land Co., a Montana corporation, appeal the decision by the District Court of the Eighteenth Judicial District, Gallatin County, finding that the July 18, 1986 agreement between Boyne U.S.A., Inc., the plaintiff, and the defendants is not enforceable by the defendants. We affirm the District Court.

The substantive issues raised on appeal are:

(1) whether the District Court erred in finding that Mallas was acting in a fiduciary capacity, as Boyne's realtor, at the time of the July 18, 1986 agreement; and

(2) whether an agreement between a principal and an agent is voidable by the principal when the agent fails to disclose information regarding the agreement.

Boyne U.S.A., Inc. (Boyne) is a Michigan corporation authorized to do business in the state of Montana. The corporation is solely owned by the Kircher family, with Everett Kircher as president and his son, John Kircher, as vice-president. Among its holdings, Boyne owns the Big Sky resort properties located south of Bozeman, Montana.

John Kircher has served as general manager of Boyne's Big Sky resort properties since 1982. His duties as general manager of the Big Sky resort includes handling routine to complex real estate transactions. While John Kircher was required to clear important transactions with the home office, no consistent pattern of obtaining written corporate resolutions for such transactions was observed. At a special meeting of Boyne's Board of Directors on February 1, 1985, John Kircher was given authority by the Board to:

investigate inquiries into the possible sale of Big Sky of Montana's properties and/or the Corporation's possible purchase of other ski areas. This would entail discussions with prospective buyers as to their actual interest and ability to make such purchases; and . . . John Kircher will present any such proposal(s) which appear to be valid to the Board for consideration and whatever action the Board deems appropriate.

John Kircher subsequently signed a one year listing agreement on March 28, 1985 with the Montana Territorial Land Co., a closely held corporation engaged in the sale of real estate and owned by Nicholas Mallas and other family members. The listing agreement was accepted by Mallas, a licensed real estate agent, on behalf of the Montana Territorial Land, Co. Mallas then began a search for a buyer for the Big Sky resort properties.

In September, 1985, Everett Kircher wrote to Mallas on behalf of the Boyne's Board of Directors, advising Mallas that John Kircher executed the March, 1985 listing agreement without their knowledge or authority. Everett Kircher advised Mallas that the Board deemed the contract null and void ab initio because the agreement may result in the sale of a substantial portion of Boyne's assets not in the ordinary course of business which would require shareholder approval. Everett Kircher further wrote that the Board "simply require[s] that you deal directly with our corporate home office to negotiate an agreement which we can present to the Board of Directors for their approval." This issue was not resolved and the listing agreement was permitted to expire in March, 1986. While the listing agreement was in effect, no sale was consummated. The listing agreement, however, provided that Mallas would receive a commission for the sale of the property if it was sold within twelve months

- 3 -

after the termination of the agreement to a prospect introduced by Mallas.

In May and June, 1986, Mallas started negotiating with John Kircher regarding the sale of the Big Sky resort properties. Mallas apparently intended to be one of the ultimate purchasers of the resort, although conflicting evidence exists as to whether this was clearly disclosed to John Kircher. Mallas submitted two written offers to John Kircher, one for $15 million and one for $17 million, with different downpayments. John Kircher acknowledged receipt of these offers and then relayed the price, downpayment, interest rate, and the time over which the payments would be made to Boyne by telephone to Boyne through Everett Kircher. Boyne, however, rejected the two offers. Because of the rejection, the written offers were not forwarded to Boyne headquarters by John Kircher, and the Board of Directors in Michigan did not know of the specific terms contained in the two offers.

On July 18, 1986, Mallas called John Kircher and advised him that he had a new offer to purchase the property. The offer was a $7 million downpayment and a $13 million note. John relayed this offer to Boyne by telephone and was then told that he could inform Mallas that the price was acceptable. No terms or conditions of the offer other than the price were discussed during the telephone call and no authority was given to sign a binding contract. When John Kircher indicated that the latest offer was acceptable, Mallas then arranged to have a proposed agreement typed.

Mallas and John Kircher met on July 19, 1986 at a secluded lodge in Madison County. At that meeting, Mallas presented a written offer, dated July 18, 1986, that he exclusively prepared for the purchase of the property. John Kircher, his wife, Sara Kircher, and Mallas were present at

the meeting. The July 18, 1986 written offer contained provisions increasing the purchase price to $21.2 million; providing for an $8.2 million downpayment; granting the Montana Territorial Land Co. a $1.2 million commission; subordinating Boyne's note to "any bank financing required by the Buyer, working capital required by the company and any sale and leaseback of the machinery and equipment required by the Buyer;" allowing Mallas and Frank a unilateral right to rescind the agreement without any obligation or reason while Boyne had no such option; and stating that sellers have the requisite authority, including Board of Directors' and shareholders' approval, to sell the Big Sky resort properties.

After reading the July 18, 1986 document, John Kircher had reservations about the document. No telephone service was available at the secluded lodge, leaving John unable to talk to either the Boyne's Board of Directors or an attorney employed by Boyne. John asked few, if any, questions. Nonetheless, he signed the document after Mallas convinced him that the document was not binding but merely a "letter of intent" which Mallas needed to show his financial backers in California to establish that Boyne was serious about selling its properties.

On July 30, 1986, an attorney for Boyne wrote to Mallas claiming that the July 18, 1986 agreement was of no force and effect because the letter was only a nonbinding letter of intent; the offer was vague; Mallas failed to disclose in the agreement that he was acting as a principal and on behalf of the Montana Territorial Land Co.; Mallas's unilateral right of recession was unconscionable and unenforceable; and the agreement had not been reviewed by an attorney, contrary to what the agreement stated. Boyne therefore brought action to void and rescind the July 18, 1986 agreement. Nick Mallas

and Bruce Frank, the defendants, brought action to specifically enforce the agreement. The actions were consolidated. The District Court, sitting without a jury, entered findings of fact and conclusions of law and submitted an order that the July 18, 1986 agreement between Boyne and Mallas and Frank is of no further force and effect. Mallas and Frank appeal.

The first issue raised on appeal is whether the District Court erred in finding that Mallas was acting in a fiduciary capacity, as Boyne's realtor, at the time of the July 18, 1986 agreement.

The District Court found that up to and including the time when Mallas signed the July 18, 1986 agreement for the purchase of the Big Sky resort, Mallas was acting as a real estate agent for Boyne and therefore was in a fiduciary relationship with Boyne. The court noted that the most important factor which it based this conclusion upon was the July 18, 1986 agreement, drafted by Mallas, which provided that Mallas's company, the Montana Territorial Land Co., was to receive a $1.2 million real estate commission.

Mallas and Frank argue that substantial credible evidence does not support the court's finding that a fiduciary relationship existed. In attempting to explain the word "commission" in the July 18, 1986 agreement, Mallas and Frank argue that the "question of a 'real estate commission' was never a factual." They argue that John Kircher knew that the "stated 'commission' was not a true earned real estate commission" because Kircher knew that Mallas was not acting as Boyne's realtor when he attempted to buy the property and that it was Frank who suggested that the contract should provide for a $1.2 million commission. Mallas and Frank state that the commission would allow them additional capital to renovate the golf course and make other improvements.

Mallas and Frank therefore argue that the significance the District Court places on the use of the word "commission" is not supported by the evidence. We disagree.

When a district court determines that an extrinsic ambiguity exists in a contract, evidence may be used to determine the intent of the parties. Section 28-2-905(2), MCA; Monte Vista Co. v. Anaconda Co. (Mont. 1988), 755 P.2d 1358, 1362, 45 St.Rep. 809, 814; Martin v. Laurel Cable T.V., Inc. (Mont. 1985), 696 P.2d 454, 457, 42 St.Rep. 314, 317. The terms of a contract are considered ambiguous when different interpretations are possible. Monte Vista Co., 755 P.2d at 1362, 45 St.Rep. at 814. In the present case, the District Court did not note any ambiguity in the terms of the contract providing Montana Territorial Land Co. with a real estate commission of $1.2 million. The District Court therefore found that this most important provision contained within the July 18, 1986 agreement was one of the circumstances that allowed it to conclude that Mallas was acting as a real estate agent and therefore in a fiduciary relationship with Boyne. The District Court did not err in relying upon the unambiguious contract term "commission." This provision granting Mallas's Montana Territorial Land Co. a $1.2 million commission establishes that a fiduciary relationship existed between Mallas and Boyne.

The term "commission" is defined by Webster's Dictionary as "a formal written warrant granting the power to perform various acts or duties." Webster's Ninth New Collegiate Dictionary 265 (9th ed. 1984). If the language of the contract is clear and explicit and does not involve an absurdity then the contract's language governs the interpretation of the contract. Section 28-3-401, MCA. The contract provides that Montana Territorial Land, Co. was to receive a $1.2 million commission. The terms of the contract

implicitly grants Mallas, as the real estate agent, the power to perform various acts or duties in connection with the sale of the Big Sky resort properties. By granting Mallas a commission, the contract also establishes that a fiduciary relationship existed. The statute addressing when extrinsic evidence concerning a written agreement may be considered, § 28-2-905, MCA, precludes us from even considering Mallas's "argument" that everyone concerned knew that the commission was not really a commission. We therefore hold that substantial credible evidence supports the District Court's conclusion that a fiduciary relationship existed between Mallas and Boyne, as a result of Mallas acting as Boyne's realtor at the time the July 18, 1986 agreement was signed.

The second issue raised on appeal is whether an agreement between a principal and an agent is voidable by the principal when the agent fails to disclose information regarding the agreement.

Mallas and Frank argue that substantial credible evidence does not support the District Court's conclusions that Mallas breached his duty as Boyne's real estate agent by not disclosing critical information about the agreement. They further argue that substantial credible evidence does not support the District Court's conclusions that Boyne, as the principal, may elect to rescind the agreement. We disagree.

A contract is voidable by a principal if the principal's agent, who was employed to sell the principal's property, purchases the property himself, either directly or indirectly through a third person. Crowley v. Rorvig (1921), 61 Mont. 245, 251-52, 203 P. 496, 496-97. The principal's right of remedy is not defeated by the amount of consideration, the absence of undue advantage, or other similar features. Only after the principal has confirmed that he has full knowledge

of all the facts, will this right to avoid the contract no longer be available to the principal. Crowley, 61 Mont. at 252, 203 P. at 497. The reasoning behind this well established principal is to insure that an agent, when carrying out an entrusted duty as the agent, does not place his interests above the principal's interests. This Court recognizes that when an agent's and principal's interests are brought in conflict, the agent will not necessarily look upon the principal's interests as more important and entitled to more protection than his own. Therefore, the courts allow a principal to void a contract without even inquiring into whether the agent obtained an advantage or acted fraudulently. Crowley, 61 Mont. at 252-53, 203 P. at 497. A principal may void the entire contract even though purchasers other than the agent are also involved in the transaction. Crowley, 61 Mont. at 261-62, 203 P. at 500.

As noted above, Mallas was acting as Boyne's real estate agent at the time the July 18, 1986 agreement was signed and therefore a fiduciary relationship existed between Mallas and Boyne. Mallas and Frank note that John Kircher, as general manager, vice-president and director of Boyne, was also an agent of Boyne. Mallas and Frank therefore argue, citing § 28-10-604, MCA, that knowledge imparted to John Kircher by Mallas is imputed by law to Boyne. While Mallas and Frank attempt to switch the focus from Mallas's duties as an agent for Boyne to John Kircher's duties as an agent for Boyne, we hold that the proper focus is whether Mallas breached his duty by not disclosing all pertinent facts regarding his purchase of the Big Sky resort properties to Boyne and whether he acted in the utmost good faith. Mallas's and Frank's reliance on § 28-10-604, MCA, is therefore misplaced in light of the entire facts. Further, as we have noted previously, "[i]n the event of any litigation between [the

agent] and his employer, the burden is upon [the agent] to prove both the permission and the exemplary manner in which he availed himself of it. . . ." First Trust Co. v. McKenna (1980), 188 Mont. 534, 539, 614 P.2d 1027, 1030 (quoting 12 Am.Jur.2d Brokers § 91 (1964)).

As Boyne's agent, Mallas in his fiduciary capacity had the duty to act in the utmost good faith towards his client, which includes a duty to make full disclosure. When the agent is buying the property himself, this duty to disclose all pertinent facts becomes particularly important. McKenna, 188 Mont. at 539, 614 P.2d at 1030. The evidence supports the District Court's finding that Mallas knew or should have known that Boyne's Board of Directors did not know of the specific terms of the July 18, 1986 agreement and that John Kircher did not have the authority to sign an agreement to sell the Big Sky resort properties. Specifically, the evidence shows that Mallas exclusively prepared the July 18, 1986 agreement and that John Kircher first saw this agreement on July 19, 1986 at a secluded lodge in Madison County. No telephone was available for John Kircher to call and discuss the contract provisions with either the Boyne headquarters or an attorney employed by Boyne. Mallas himself did not discuss the provisions in the document with John Kircher, including the meaning and possible effects of the subordination clause, and then convinced John Kircher that the document was only a "letter of intent."

In addition, Mallas allowed John Kircher to sign the agreement with the provision stating that the "[s]ellers represent that they have the requisite authority, including Board of Directors' and Shareholders' approval, to sell the assets as described herein." The evidence shows that Mallas received a letter from Boyne's headquarters in September, 1985 stating that John Kircher did not have the requisite

authority to sign a listing agreement to sell the Big Sky resort properties without the Board of Directors' approval of the specific terms. We fail to see how Mallas, in the exercise of utmost good faith, could therefore contend that approximately ten months later John Kircher nonetheless had the authority from the Board to sell the entire Big Sky resort properties when John Kircher himself had not seen the July 18, 1986 agreement until the July 19, 1986 meeting at the secluded lodge. In light of the circumstances, a secluded lodge with no telephone, Mallas knew that John Kircher was unable to convey to the Boyne headquarters any of the specific provisions of the contract.

While Mallas and Frank attempt to argue that the District Court "forgot" evidence more favorable to them, we hold that the District Court properly considered all of the evidence and thus made findings of fact consistent with the evidence. The trier of facts, and not this Court, is in the best position to assess the credibility and weight of conflicting evidence. Mountain West Farm Bureau Mutual Ins. Co. v. Girton (Mont. 1985), 697 P.2d 1362, 1363, 42 St.Rep. 500, 501. We affirm the District Court's conclusion that the July 18, 1986 agreement between John Kircher and Nick Mallas and Bruce Frank is voidable by Boyne.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 11 -