[Civ. No. 2614. First Appellate District, Division One.—March 19, 1919.]

## FRANK J. CUNEO, Appellant, v. A. P. GIANNINI et al., Respondents.

[1] PROFITS — DETERMINATION OF MEANING.—The terms "profits" and "net profits" depend for their meaning upon the nature of the business and properties with respect to which they are employed.

[2] ID.—NET PROFITS—TRADING CORPORATION.—As applied to a trading corporation which makes its main profits in buying, selling, exchanging, and generally handling both real estate and personal properties and securities, investing, enhancing, and turning over its capital through the process of dealing in the main in property in kind, the term "net profits" means not merely the difference between the receipts and disbursements, but also the difference between the original and the increased value of its assets.

[3] ID.—INTERPRETATION BY PARTIES.—The meaning to be given the term "net profits" as employed by the parties to a given contract, if the same is doubtful, must be determined in some measure at least by the interpretation which the parties themselves placed upon it during the life of the agreement in which it was used.

[4] CORPORATION LAW—COMPENSATION OF CORPORATION MANAGER—FIXING BY DIRECTORS — VALIDITY OF — QUALIFICATION OF DIRECTOR.— In the absence of any showing of fraud, the action of the board of directors of a corporation in fixing the sum to which its manager is entitled, and in directing the issuance of the corporation note therefor which is subsequently paid, is not void by reason of the fact that such action is taken at a meeting attended by a bare majority of the board, one of whose members making up such majority is the wife of said manager.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

Purcell Rowe and Carl E. Day for Appellant.

Morrison, Dunne & Brobeck and Fred L. Dreher for Respondents.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendants. The action was one instituted by the

plaintiff on behalf of himself as a stockholder of one of the defendants, J. Cuneo (a corporation), and on behalf of other stockholders thereof, to recover from the defendant A. P. Giannini for the corporation the sum of $37,883.34, alleged to have been illegally paid to said defendant Giannini by the directors of said corporation.

The facts of the case are substantially uncontroverted and are briefly as follows: For many years J. Cuneo had been engaged in business in San Francisco and adjacent counties as a dealer in and trader of real estate and other kinds of property, with his offices in that city. In the year 1903 he caused to be formed the J. Cuneo Company, a family corporation, as a more convenient instrumentality for the conduct of his business and the consolidation and handling of his properties. The corporation when thus formed took over his business and continued it. Shortly after the formation of the corporation Cuneo died, leaving a widow and nine children, of whom three were minors. One of the elder daughters was at the time married to the defendant A. P. Giannini, and the latter, largely by reason of the meager business experience of the other members of the family, was intrusted with the management of the corporate affairs. A contract was entered into on October 14, 1903, between the J. Cuneo Company on the one hand and said A. P. Giannini on the other, with relation to the terms, conditions, and extent of the latter's management of the business affairs and properties of the former during a period of ten years, the portion of which contract essential to this case being that in relation to the compensation to be received by said Giannini, which reads as follows:

"That said corporation, the party of the second part, shall pay to said party of the first part for his services as said manager a sum of money in gold coin of the United States equivalent to 25% of the net profits of said corporation, an accounting by said manager to be made at the expiration of each year during the life of this agreement and payment to be made at the time of said accounting."

In pursuance of said contract said A. P. Giannini assumed and entered upon the management of said corporation and continued therein for a period of almost ten years, during which time the corporation continued to be engaged along the lines of the former business of itself and its organizer in

buying, selling, trading, and dealing in real estate, bank stocks, and other forms of property. From time to time during those years the corporation, acting through its officers, but with the knowledge and approval of the members of the family constituting its stockholders, took account of the transactions and properties of the corporation and of the increase in values of its various kinds of property, and these were carried into a loss and gain account upon the books of the corporation, which was understood to represent the profits from time to time accruing from and in its business.

In reckoning these estimated profits the properties of the corporation were dealt with in kind, and their increase in value or the increase in value of other properties for which they were exchanged, either directly or through their sale, and the investment of their proceeds in other properties, were treated as profits, and it is testified to by Mr. Giannini and other members of the family without substantial contradiction that it was the general understanding of all concerned that Mr. Giannini was, under his agreement, to be credited with twenty-five per cent of these increased valuations as shown by these occasional appraisements and loss and gain accounts, and the evidence shows that from time to time he received such credits on the books of the corporation.

In the early part of the year 1913 it was decided at a meeting of the directors of the corporation to go into virtual liquidation of its affairs and to effect a distribution of its assets among its several stockholders in proportion to their respective holdings of stock therein, such distribution to be based upon an appraisement and valuation of the properties of the corporation presently to be made. Pursuant to this understanding on January 28, 1913, at a meeting of the stockholders of the corporation, all being present, such appraisement and valuation was made and agreed to, and, so far as appears from the record, was entirely fair and satisfactory to all concerned. These appraisements and valuations showed that the values of the properties of the corporation which were thus to be liquidated and distributed had largely increased during the term of Mr. Giannini's services as manager of the affairs of the corporation, which enhanced valuations represented profits in kind though not in money. In the course of this proposed liquidation of the properties and affairs of the corporation the question of the interest and share of Mr.

Giannini under the terms of his agreement naturally arose, and it was disposed of at a meeting of the directors held on March 11, 1913, at which a majority of such directors were present, and at which the matter of Mr. Giannini's compensation under his said agreement was considered, and the amount thereof fixed at the sum of $36,994.24 as the balance due him thereunder, and it was then further decided and directed that the note of the corporation should be executed and delivered to him for said sum in full settlement for his said services. Such note was thereupon executed and was received by him, and was subsequently paid. It is this transaction which is assailed by the plaintiff in this action, and which the trial court by its judgment herein sustained.

The main and in fact the only substantial question presented upon this appeal is that of the construction of the term "net profits" as the same appears in the clause of the agreement between the corporation and Mr. Giannini above set forth. It is the contention of the appellant that this phrase has a well-defined meaning, in which meaning it must be held to have been used by the parties to this agreement, and which meaning could not be changed or altered by oral evidence; that according to such meaning "net profits" constitute the difference between receipts and expenditures, and hence can only be represented in money; that net profits must always be actual as distinguished from estimated profits, and hence that the settlement had by the directors of this corporation with the respondent Giannini having been based upon the estimated increases in valuation of the properties of the corporation in kind, is in contravention of the agreement, and cannot therefore be upheld.

We are not prepared to give our concurrence to this contention on the part of the appellant herein. [1] The terms "profits" and "net profits" depend, in our judgment, for their meaning upon the nature of the business and properties with respect to which they are employed. The leading case upon the subject of profits in kind is the case of *In re Spanish Prospecting Company*, 1 Ch. [1911] 92, [20 Ann. Cas. 677]. The Spanish Prospecting Company had purchased from Punchard, Fleming & Vivian certain mining properties in Spain, and had engaged the services of the vendors in the management of said properties, agreeing to pay each of the members of the firm so retained a certain salary, which, how-

ever, they were not to be entitled to draw except only from the profits, if any, arising from the business of the company. In the course of said business the company acquired certain shares in another company called the Spanish Minerals Development Company, Ltd., which later went into liquidation and distributed its assets among its shareholders. By virtue of this distribution the Spanish Prospecting Company received certain shares, and also certain debentures of another corporation named the Esperanza Copper and Sulphur Company; these debentures were held in kind until such time as the Spanish Prospecting Company went into voluntary liquidation, when the question arose as to whether these were to be regarded as "profits" from which the aforesaid salaries could be paid. In an extended and luminous discussion of the subject, Lord Justice Fletcher-Moulton says: "The word 'profits' has in my opinion a well-defined legal meaning, and this meaning coincides with the fundamental conception of profits in general parlance, although in mercantile phraseology the word may at times bear meanings indicated by the special context, which differ in some respects from this fundamental signification. 'Profits' implies a comparison between the state of a business at two specific dates usually separated by the interval of a year. The fundamental meaning is the amount of gain made during the year. This can only be ascertained by a comparison of the assets of the business at the two dates. For practical purposes these assets, in calculating profits, must be valued and not merely enumerated."

The rule announced in this case has been followed by numerous later decisions on both sides of the Atlantic, notably in the case of *Stein* v. *Strathmore Worsted Mills Co.*, 221 Mass. 86, [108 N. E. 1029], wherein it was held by the supreme court of Massachusetts that, under a contract whereby a plaintiff became the defendant company's selling agent at an annual salary and also a percentage on net profits, the term "net profits" meant the difference between a sum made up at the end of the year of the receipts of the business and of the value of the stock, materials, machinery, real estate, and plant on hand, as compared with a sum embracing all similar items as of the beginning of the year. The following cases also recognize and apply the same rule for the estimation of the net profits of business adventures of the character of that

in which the J. Cuneo Company was chiefly engaged during the period of the plaintiff's connection with it in the capacity of its manager: *Meserve* v. *Andrews,* 106 Mass. 419; *Jones* v. *Davis,* 48 N. J. Eq. 493, [21 Atl. 1036] ; *Mayer* v. *Nethersole,* 71 App. Div. 383, [75 N. Y. Supp. 990]. [2] The instant case, in fact, furnishes a yet stronger reason for the application of the rule than that supplied by some of the foregoing cases, since the corporation of which the plaintiff herein was manager was essentially a trading corporation, making its main profits in the buying, selling, exchanging, and generally handling both real estate and personal properties and securities, investing, enhancing, and turning over its capital through the process of dealing in the main in property in kind. When the agreement between the parties is looked to it will be seen that this fact was apparently in the minds of those who framed it, since it is therein provided that the sum which the plaintiff is to be paid for his services is "a sum of money in gold coin of the United States *equivalent* to 25% of the net profits of the corporation." The use of the word "equivalent" in this connection would seem to quite clearly indicate that the net profits of the corporation were not to be altogether comprehended in terms of a money residue as a result of the business of the year.

[3] In addition to these considerations we are of the opinion that the meaning to be given the term "net profits" as employed by the parties to this contract, if the same be doubtful, must be determined in some measure at least by the interpretation which the parties themselves placed upon it during the nearly ten years of the conduct of the business of the corporation by the plaintiff under this contract. The evidence, we think, shows clearly that upon several occasions, and particularly with respect to certain specific properties, the amount to which the plaintiff was entitled and which he actually received was determined by a comparison of the values of the assets of the corporation in kind at different periods of time. These valuations and the assignment to the plaintiff of his one-fourth interest in the said assets and properties, based thereon, were, we think, made fairly and openly, and with the knowledge and acquiescence of the various members of the Cuneo family interested therein, and this being so, we think it sufficiently appears that the parties themselves have placed upon this agreement the very inter-

pretation in practical effect which the foregoing authorities would indicate to be the proper one as a matter of law.

[4] The further contention of the appellant to the effect that the action of the directors of the corporation in fixing the sum to which the respondent Giannini was entitled, and in directing the issuance of the corporation note therefor which was subsequently paid, must be held void, for the reason that such action was taken at a meeting attended by a bare majority of the said board, one of whose members making up such majority was the wife of said respondent, we think to be possessed of no merit. The said meeting was regularly called and held, so far as the record discloses. The wife of Mr. Giannini was also one of the shareholders in this family corporation, whose interests as such would be adversely affected by the action of the board in the allowance of his claim. She was not directly or beneficially interested, in a financial sense, in the result of the action of said board in the allowance of said claim. The mere fact that the claimant was her husband, and that the amount of his claim if allowed and paid would work an accretion of the community funds of the spouses, would not, in our opinion, create such an interest in the wife as would disqualify her from acting as a member of the board of directors of the corporation. None of the cases cited by the appellant goes so far, and we are satisfied that to uphold the view of the appellant in this regard, in the absence of any showing of fraud, would be to create an altogether too narrow limitation upon the powers of boards of directors or trustees of family corporations in which very frequently like dual relations and interests exist. In the instant case there is no showing of any kind tending in the slightest degree to disclose any sort of misleading, or overreaching, or concealment, or advantage, or fraud of any kind on the part of the respondent in respect to any of the transactions in the course of his management of the properties and affairs of the family corporation, and the fact that this action was begun and has been prosecuted by a minority stockholder after a refusal on the part of the directors to reconsider their action, or to themselves institute the same, would serve to indicate that the majority of the stockholders do not wish the action of the directors in the premises overturned.

The foregoing being our view of the law and the facts of this case, it follows that the judgment herein should be affirmed. It is so ordered.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 15, 1919.

All the Justices concurred.