[S. F. No. 15937. In Bank.—May 27, 1938.]

HAROLD WACHS, Appellant, v. LIONEL WACHS, Respondent.

Fitzgerald, Abbott & Beardsley for Appellant.

McKee, Tasheira & Wahrhaftig for Respondent.

THE COURT.—A hearing of the instant appeal by this court after decision thereon by the District Court of Appeal has resulted in the conclusion that the decision that was rendered by the latter court is correct. The opinion therein, which was prepared by Mr. Justice Spence, is therefore adopted as the opinion of this court. It is as follows:

"Plaintiff brought this action upon a contract seeking to recover a share of certain commissions claimed to be due him under the terms of said contract: From a judgment in favor of defendant, plaintiff appeals.

"For approximately ten years prior to October 1, 1931, plaintiff and defendant had engaged in the real estate business as copartners under the name of 'Wachs Bros.'. A dissolution agreement was entered into as of that date. There was a paragraph in said agreement entitled 'Good Will' which read in part as follows:

" 'It is contended by Harold Wachs that there is a good will which appertains to the partnership and that upon the dissolution thereof compensation should be made to Harold Wachs by Lionel Wachs. Attached hereto is a list called schedule 10 of the persons with whom Wachs Bros. have been in contact during the life of the partnership and to whom maps, letters and other literature have been sent. . . . Lionel Wachs hereby agrees to pay to Harold Wachs out of the commissions earned from any transactions consummated on or before October 1, 1934, a sum not to exceed $2,500, which sum shall be payable.as follows: When any transaction leading to a commission is closed as to any persons on said Schedule 10 . . . Lionel Wachs agrees to pay 25% thereof to Harold Wachs, within thirty days after the receipt thereof, until the sum of $2,500 has been paid.'

"In his complaint, plaintiff alleged among other things 'That the persons listed on said Schedule 10, by reason of

their ownership of property, or interests in property, or their contacts with owners of property, or owner of interest in property, were persons with or through whom future patronage was anticipated by said partnership'. These allegations of the complaint were stricken out upon motion of defendant.

''On the trial plaintiff made an offer of proof to which an objection was sustained by the trial court. It appeared that approximately 200 persons were named on said schedule 10. It was stated in the contract that said schedule contained a list of '*the persons* with whom Wachs Bros. have been in contact during the life of the partnership'. (Italics ours.) (A perusal of the list shows that, with four or five exceptions, it was made up entirely of the names of natural persons rather than of corporations of partnerships. The addresses of said persons were listed, which addresses in numerous cases were listed as in care of some bank, investment company, chain store corporation or other commercial institution. These companies were not otherwise listed on said schedule 10. Plaintiff's offer was made in great detail but it may be briefly summarized. He offered to prove that approximately 50 persons named on said list were either officers, agents or employees of certain principals such as banks, investment companies, chain store corporations or other commercial institutions, and that said persons had acted for and on behalf of their respective principals in dealing with the partnership as real estate brokers prior to the dissolution; that the partnership had never had any transactions with said 50 persons in their individual capacities but had had numerous transactions with them in their respective representative capacities, which transactions had resulted in the payment of commissions to the partnership. It was stated that said offer of proof was made to show the capacities in which said persons had acted in dealing with partnership prior to its dissolution and to place before the trial court the circumstances surrounding the making of the contract in order to enable the trial court to determine the meaning of the words 'When any transaction leading to a commission is closed as to any persons on said Schedule 10' as used in said contract. It was stipulated by the parties that after the dissolution and between October 1, 1931, and October 1, 1934, transactions were had with certain persons named in said offer of proof and in said schedule 10 in their representative capacities and

on behalf of their said principals, and that said transactions resulted in net commissions paid to defendant Lionel Wachs in a sum in excess of $8,000. This action was brought to recover a portion of said last-mentioned commissions.

"Appellant contends that the trial court erred in granting the motion to strike and in sustaining the objection to the offer of proof and therefore the judgment should be reversed. In our opinion this contention must be sustained.

■ "The parties agree upon the general principles of law applicable in determining the admissibility of parol evidence in connection with written contracts but they disagree upon the question of whether such evidence was admissible here. It is conceded that the question involved is whether the language 'When any transaction leading to a commission is closed as to any person on said Schedule 10', as used in said contract, is clear and explicit or whether said language involves such an uncertainty as to permit the introduction of parol evidence in aid of the interpretation thereof. It is further conceded that 'the question whether an uncertainty or ambiguity exists is one of law, and the lower court's finding on this issue is not binding on appeal'. (*Brant* v. *California Dairies, Inc.*, 4 Cal. (2d) 128, 133 [48 Pac. (2d) 13].) We are of the opinion that owing to the various senses in which the word 'transaction' may be used, such an uncertainty existed in the language employed in the contract here as to permit the introduction of the parol evidence offered.

■ "The word 'transaction' may imply something more than sale, lease or contract as used in the contract before us. It has been stated that said word embraces within its meaning 'the doing or performing of any business' (Bouvier's Law Dictionary); 'negotiation' (*United States* v. *Pan American Petroleum Co.*, 55 Fed. (2d) 753); 'negotiations affecting property rights, contracts, agreements, and the negotiations resulting in contracts and agreements and in the transfer of titles'. (*Tanner* v. *State*, 161 Ga. 193 [130 S. E. 64].) Other definitions may be found in the authorities of which we need cite but a few. (*Stephens* v. *Short*, 41 Wyo. 324 [285 Pac. 797]; *Bright* v. *Virginia etc. Co.*, 270 Fed. 410; *Southeastern Life Ins. Co.* v. *Palmer*, 120 S. C. 490 [113 S. E. 310]; *Wilson* v. *Wilson*, 83 Neb. 562 [120 N. W. 147].) Perhaps the word 'transaction' is such a word as was in the mind of Mr. Justice Holmes when he said, 'A word is not a

crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' (*Towne* v. *Eisner*, 245 U. S. 418, 425 [38 Sup. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254].)

 ''What then is the meaning, or the 'color and content', of the word 'transaction' as used in the contract before us? Should the phrase in question be interpreted to mean 'when any sale, lease or contract leading to a commission is closed as to any person on said Schedule 10' or should it be interpreted to mean 'when any negotiation (doing of any business) leading to a commission is closed as to any person on said schedule 10.' If the first suggested meaning be given to the word 'transaction', then perhaps, the language should be restricted to those cases in which sales, leases or contracts leading to commissions were closed as to the persons named on schedule 10 as principals. If the second suggested meaning be given, then the language is broad enough to include those cases in which the negotiations leading to a commission were closed as to the persons on said schedule 10 either as principals or as representatives of others. It cannot be said from a reading of the contract whether the word 'transaction' was intended to convey the first or second meaning above suggested. It is one of those contracts where the words 'consistently admit of two interpretations, according to the subject matter in contemplation of the parties' and in which 'parol evidence might be admitted to show the circumstances under which the contract was made and the subject matter to which the parties referred'. (*Jenny Lind Co.* v. *Bower & Co.*, 11 Cal. 194, 198; see, also, *McNeny* v. *Touchstone*, 7 Cal. (2d) 429 [60 Pac. (2d) 986]; Civ. Code, sec. 1647; Code Civ. Proc., sec. 1860.) The trial court should therefore have permitted appellant to plead and prove the surrounding circumstances, not for the purpose of varying the terms of the written instrument, but for the purpose of aiding the court in interpreting the contract of the parties as embodied in the written instrument.''

The judgment is reversed.