[Civ. No. 20156.   Second Dist., Div. One.   Oct. 20, 1954.]

KEVIN B. SWEENEY, Appellant, v. EARLE C. ANTHONY, INC. (a Corporation), Respondent.

Karl F. Geiser for Appellant.

Overton, Lyman, Prince & Vermille, Carl J. Schuck and Lawrence J. Larson for Respondent.

DRAPEAU, J.—A stipulation of facts was filed herein which discloses, among other things, that defendant's business was operated in two separate divisions: automotive and radio. Both television and radio activities were conducted by the latter.

In 1944, defendant, as owner of radio station KECA, made verbal agreements with key employees of both divisions: that they would receive specified percentages of the net profits derived from both divisions. The "arrangements were not limited to any profits over any fixed base." Upon sale of station KECA these employees were paid their percentages of the capital gain on the sale, in addition to other net profits.

In 1947, the verbal agreements were replaced by written contracts with key personnel. A typical form of such contract is attached to the stipulation and marked Exhibit A. Nineteen of these were in effect in the years 1950 and 1951. They specifically excluded capital gains and losses in figuring net profits.

Plaintiff testified that he became a full-time employee of defendant on June 1, 1948, as sales manager of radio station KFI, with the understanding that when KFI-TV came on the air he would be general sales manager of that station.

On August 22, 1950, plaintiff entered into an employment contract with defendant. This was headed: "KFI House Letter to Kevin Sweeney from E. C. Mills Subj. Reorganization, Sales Department." Attached thereto was an executive order effective September 1, 1950, appointing plaintiff general sales manager of TV sales, and proposing for his consideration the fixing of his compensation on the following basis for the year 1950:

"Against a drawing account of $500 semi-monthly salary period—to be regarded in any case as minimum compensation

—an amount equal to 1% of the amount by which the net profits of the Radio Division of Earle C. Anthony, Inc., exceeds in the calendar year of 1950 the sum of $215,000. The term 'net profits' is construed as after all taxes and other business deductions.''

On October 26, 1950, a supplemental writing was executed by which the following language was substituted for the above quoted profit participation clause in the agreement of August 22, 1950:

''A drawing account of $500 per semi-monthly salary period—to be regarded in any case as minimum compensation —and additional compensation equal to 1% of the amount by which the net profits of the Radio Division of Earle C. Anthony, Inc., exceeds in the calendar year of 1950 the sum of $215,000.00. The term 'net profits,' is construed as after all taxes and other business deductions.''

Thereafter, on January 5, 1951, the parties executed a writing reciting: ''Pending adjustments to be made in the contracts now existing between the Radio Division of Earle C. Anthony, Inc., and its General Sales Manager (plaintiff), please consider this a renewal of the present contract.''

On September 6, 1951, defendant consummated a sale of its station KFI-TV. Capital gains were derived therefrom.

At the close of that year, an audit of the books of defendant's radio division was made by a firm of certified public accountants. This audit reported the capital gains realized on the sale of station KFI-TV, as a part of the net profits of said radio division for that year.

Plaintiff instituted the instant action for damages for alleged breach of contract to pay compensation based on net profits, as provided in the agreements of August 22 and October 26, 1950, and as extended by the writing of January 5, 1951.

The minimum compensation of $1,000 per month was admittedly paid in full. But plaintiff contended that the capital gains realized on the sale of station KFI-TV during the employment period should be included as net profits in computing his compensation.

From a judgment in favor of defendant, plaintiff appeals.

Appellant urges that the term ''net profits'' has a fixed meaning in law, i. e., that it includes all capital gains. Also, that the language used in the instant contract was clear and contained its own standard of interpretation. As a result, that there was no reason to consider surrounding circum-

stances or extrinsic evidence. In this connection, he points out that the contract construed net profits "as after all taxes and business deductions." That nothing was said about excluding capital gains, as was done in contracts theretofore executed.

Respondent replies that the term "net profits" is susceptible to either construction contended for, i.e., as including or excluding capital gains; hence that extrinsic evidence may be considered to find out the intent of the parties.

The following language from *Barham* v. *Barham*, 33 Cal.2d 416, 422-423 [202 P.2d 289], appears applicable to the instant situation:

"A contract must receive such interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if that can be done without violating the intention of the parties. (Civ. Code, §§ 1643, 3541; see Rest., Contracts, § 236 (a).) *When the language used is fairly susceptible to one of two constructions, extrinsic evidence may be considered,* not to vary or modify the terms of the agreement but to aid the court in ascertaining the true intent of the parties (*Central Heights Improvement Co.* v. *Memorial Parks, Inc.,* 40 Cal.App.2d 591, 608 [105 P.2d 596]), not to show that 'the parties meant something other *than* what they said' but to show 'what they meant *by* what they said' (*Barnhart Aircraft, Inc.* v. *Preston,* 212 Cal. 19, 23 [297 P. 20]). Where any doubt exists as to the purport of the parties' dealings as expressed in the wording of their contract, the court may look to the circumstances surrounding its execution—including the object, nature and subject matter of the agreement (*Wachs* v. *Wachs,* 11 Cal.2d 322, 326 [79 P.2d 1085]) . . .." (Emphasis included.)

Again in *Cuneo* v. *Giannini*, 40 Cal.App. 348, 351 [180 P. 633], cited by appellant, it was stated:

"It is the contention of the appellant that this phrase has a well-defined meaning, in which it must be held to have been used by the parties to this agreement, and which meaning could not be changed or altered by oral evidence; that according to such meaning 'net profits' constitute the differences between receipts and expenditures, and hence can only be represented in money; that net profits must always be actual as distinguished from estimated profits, and hence that the settlement had by the directors of this corporation with the respondent Giannini having been based upon the estimated increases in valuation of the properties of the corporation in kind, is in

contravention of the agreement and therefore cannot be upheld.

"We are not prepared to give our concurrence to this contention on the part of the appellant herein. The term 'profits' and 'net profits' depend, in our judgment, for their meaning upon the nature of the business and properties with respect to which they are employed." (See also *Boradori* v. *Peterson,* 86 Cal.App. 753, 760 [261 P. 520].)

■ After hearing the evidence presented by both parties, the trial court found, among other things, that appellant's sole duties as general sales manager were to manage radio and television sales and, incidentally, to advise in connection with programming and talent, and did not include the rendition of any services, and that appellant did not render any services in connection with the acquisition, management or sale of respondent's capital assets, including station KFI-TV.

Also, that the term "net profits," as used in the instant contract was intended by said parties to, and in fact did, mean only such net profits as were derived by respondent's radio division from the regular and main operations thereof, to wit: from the sale of radio and television time, radio broadcasting and television telecasting, and was not intended by said parties to, and in fact did not, mean or include any gain realized by said radio division from the sale of any of respondent's capital assets. Further, that the parties never did contemplate that, and there was no meeting of minds of said parties, and no agreement at all between them that appellant should directly or indirectly be entitled to receive any part of the gains realized by respondent on the sale of any of its capital assets.

In addition, the court found that the sale of station KFI-TV was not negotiated or made as a part of the regular or main business of respondent's radio division but was incidental and collateral to said business.

A careful examination of the record before this court, discloses amply sufficient evidence to support the findings and the judgment.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.