**BENES, Plaintiff-Appellant, v. HICKOX BUILDING CO., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22088.   Decided October 20, 1952.

John J. Tetlow, Wm. J. Tetlow, Cleveland, for plaintiff-appellant.

Krueger, Gorman & Davis, Mooney, Hahn, Loeser, Keough & Freedheim, Cleveland, for defendant-appellee.

(HUNSICKER, PJ, DOYLE, J, of the 9th District; METCALF, J, of the 4th District, sitting by designation in the 8th District.)

450

## OPINION

By METCALF, J:

Plaintiff, a building contractor, brought suit against the defendant for loss of profits claimed to have been occasioned by the defendant's alleged wrongful repudiation of a building contract.

The defendant is the owner of premises located at the corner of Euclid Avenue and East 9th Street in the City of Cleveland upon which formerly was located the Hickox Building. On March 22, 1946, and while the Hickox Building was being razed to permit the construction of a commercial building especially adapted for the use and occupancy of Bond Stores, Inc., hereinafter referred to as "Bond" as lessee of the defendant under a long term lease, the parties to this action entered into a written contract for the construction of the building in question. The contract between the parties hereto provides in Article I:

"Section 1, Scope of the Work. The Contractor shall furnish all necessary labor and materials required to perform and shall perform all the work shown on the drawings entitled 'Building for Bond Stores, Inc., Euclid Avenue and East 9th Street, Cleveland Ohio,' (except such portions of the work of this Contract by the provisions of Section 1 of Article I hereof) as prepared by Walker & Weeks, Architects, hereinafter called the 'Architects,' whose address is 1240 Huron Road, Cleveland, Ohio.

"In general the work covered by this Contract contemplates a complete building, ready for use by Bond Stores Inc., hereinafter called 'Bond' as lessee of the Owner under a certain Indenture of Lease dated as of June 1, 1944 and hereinafter called the 'Lease,' but in no event shall the work covered by this Contract include the following terms:

"(a) The demolition of the existing structure known as the Hickox Building.

"(b) The furnishing of the structural steel; and

"(c) The furnishing and installation of the store fixtures and equipment;

"and the Owner reserves the right to obtain proposals on the following items (which are not at the date of this Contract included in the work covered hereby);

"(1)  Plumbing  work;
"(2)  Heating  and  air-conditioning  work;
"(3)  Electrical  work;
"(4)  Elevators  (2)  and  sidewalk  lift;
"(5)  Pneumatic  tube  system;  and
"(6)  Sprinkler  system;"

The defendant reserved the right to include any or all of these excepted items within the scope of the work to be performed by the contractor.

Article II of the Contract provides for the commencement of the work and the time of its completion as follows:

"The Contractor shall commence work on the foundations at once and shall proceed with the same as rapidly as permitted by the Progress of the work of demolition of the Hickox Building.

"The Contractor shall commence the balance of the work covered by this Contract forthwith upon the approval of this Contract by Bond and the deposit with the Disbursing Agent, in accordance with the provisions of Section 3 of Article I of the aforesaid Lease, of the cost of the New Building.

"All work covered by this Contract shall be completed by the Contractor within One Hundred (100) working days after the first delivery by the Owner to the Contractor of structural steel; * * *"

Article III of the contract provides for the contract sum to be paid to the contractor as follows:

"Section 1. The Owner shall pay the Contractor for the performance of this Contract, in current funds, as follows:

"(a) The cost of the work performed by the Contractor hereunder as such cost is defined and restricted by the provisions hereinafter contained in Section 2 of this Article III; and

"(b) The Contractor's fee which shall be Twenty Five Thousand Dollars ($25,000.00) plus an amount equivalent to Five Percent (5%) of the cost as defined and restricted in Section 2 of this Article III, of such Item (1) to (6) inclusive, as set forth in Section 1 of Article I hereof, as the Owner, in accordance with the provisions of said Section, causes to be included in the work covered by this Contract; provided, however, in no event shall such additional fee of the Contractor exceed Ten Thousand Dollars ($10,000.00), and provided further, anything in this Contract to the contrary notwithstanding, if this Contract is not approved by Bond, then the Contractor's fee shall not exceed Five Percent (5%) of the cost as defined and restricted in Section 2 of this Article of the work performed by the Contractor hereunder."

Section 2 of this Article sets forth the items that shall be included "For the purposes of determining the cost of the work performed by the Contractor hereunder."

The above are the pertinent parts of the contract involved in this litigation. At the end of the written instrument and following the signatures of the parties thereto there is a form to be signed by Bond approving the contract, which approval was not given.

Pursuant to the first paragraph of Article II the contractor did some work on the foundation and was paid therefor under the terms of the contract. Bond not having approved the contract the defendant refused to permit the plaintiff to commence the balance of the work of constructing the building. Subsequently a contract was let to a third party who constructed the building. This action is brought by the plaintiff under his claim that the defendant refused to permit him to carry out his obligations under the contract, claiming damages in the sum of $45,000.00, which he alleges to be the fair value of his profit, benefits and rights under the contract. It is defendant's contention that unless and until the contract had the approval of Bond the plaintiff had no right under the contract to commence the construction of the building.

The case was tried to the Common Pleas Court of Cuyahoga County, without the intervention of a jury, and the court found in favor of the defendant, from which judgment this appeal stands on questions of law.

There are ten separate assignments of error; and while we have examined the record with all of them in view, perhaps the sixth covers the position of plaintiff more clearly. It reads:

"The trial court erred in admitting under the guise of surrounding circumstances, parol evidence and in using said evidence to off-set an intention expressed in the written contract."

The question, the answer to which is dispositive of this appeal, is whether the approval of Bond of the building contract is essential to its enforcement as between the parties to this action?

In order to determine the importance or unimportance of the approval of the construction contract by Bond, it seems to this court that the Lease given by the defendant to Bond becomes most important. This Lease is referred to in the contract under consideration. The commencement of the construction work was to begin forthwith "upon the approval of this contract by Bond and the deposit with the Disbursing

Agent in accordance with the provisions of Section 3 of Article I of the aforesaid Lease, of the cost of the New Building."

This section of the Lease refers to the cost of the New Building and expressly sets forth that the cost shall not be less than $400,000.00, and that the Lessor shall not be required to expend in excess of that amount plus the amount of cash, if any, received by the Lessor from the salvage of the Hickox Building. It further provides that any cost of constructing the New Building in excess of this aggregate amount shall be paid by the Lessee in the manner therein provided. It further sets forth the various items that shall be included in the estimate of cost and then it provides, that prior to the commencement of the demolition of the old building, for the deposit by the Lessor with a named Disbursing Agent, or one to be selected by Lessor, with the Lessee's approval, of the $400,000.00. There was no money received from the salvage of the old building. This Section of the Lease specifically states: "All contracts for the demolition and removal of the Present Building and **for the construction of the New Building shall be approved by the Lessee.**" (Emphasis supplied.)

When it is appreciated that the New Building was completed at a cost of $909,641.44, and that the sum of $910,000.00 for the cost was deposited with the Disbursing Agent and that only $400,000.00 of this amount was deposited by the defendant, leaving the balance of $510,000.00, the amount deposited by Bond at various times during the progress of the construction of the building, it becomes apparent why Bond reserved the right in the Lease to approve both the Disbursing Agent and the Construction Contract. Further, the New Building was to be constructed to fulfill the obligations of a particular Lease for a special purpose that of Bond Stores, Inc.

Section 1 of Article I of the Lease provides, among other things that:

"The New Building shall be designed for the exclusive use of the Lessee in such manner as shall, in the sole discretion of the Lessee, meet with the requirements and needs of the Lessee's business, * * *."

The trial court admitted the Lease in the record as well as oral testimony tending to establish that the plaintiff knew when he entered into the contract the special purpose and use for which the New Building was to be constructed. That he knew the intricate provisions in the plans and specifications indicating clearly the importance to the Lessee, Bond, of the construction in accordance with its needs and usage. It is unnecessary to relate or recapitulate the evidence in the record establishing the knowledge of the plaintiff of the limitation placed upon the defendant in its Lease with Bond both as to

the financing and the construction. This testimony and the Lease were not introduced to vary the terms of the written contract in any way, nor does this evidence do so. Of course, this evidence must be limited to the subject matter of the agreement thereby placing the court in the position of the parties to the contract, so that it may determine the meaning as expressed in the written agreement. It is not for the purpose of giving effect to an oral agreement. The trial court so limited it. The question the court was seeking to answer is the meaning of the writing at the time and place when the contract was made. The surrounding circumstances relative to the subject matter at that time necessarily throw light upon the meaning of the expressed words in the contract and such circumstances and the Lease were properly admitted.

In Williston on Contracts, Revised Edition, Volume 3, Page 1777, Section 618 (4), it is said:

"The circumstances under which a writing was made may always be shown. The question the court is seeking to answer is the meaning of the writing at the time and place when the contract was made; and all the surrounding circumstances at that time necessarily throw light upon the meaning of the contract."

See also, Section 629, page 1804 of this volume.

Wigmore on Evidence, Third Edition, Volume E, discusses this question under the heading "Sources of Interpretation" beginning on page 224, Sec. 2470. At the bottom of page 227 it is said:

"Once freed from the primitive formalism which views the document as a self-contained and self-operative formula, we can fully appreciate the modern principle that the words of a document are never anything but indices to extrinsic things, and that therefore **all the circumstances must be considered which go to make clear the sense of the words**—that is, their association with things."

In discussing the admissibility of parol evidence tending to prove the circumstances under which the written instrument was executed, the Court of Appeals (California) in Central Heights Improvement Co. v. Memorial Parks, Inc., 105 Pac. (2d) 596, said on page 605:

"The trial court admitted, over the objection of appellant, parol and extrinsic evidence consisting of conversations between the parties * * * and occuring before, during and subsequent to the execution of the agreement of April 14th. The rulings were proper. The evidence was admissible, not to vary or modify the terms of the contract * * * but for the purpose of aiding the court in ascertaining the true intent and meaning of the language used there."

The court points out that this is so, "not by showing that the parties meant something other than what they said, but by showing what they meant by what they said."

In discussing the admissibility of the general surroundings in which the contract was written, Judge Learned Hand, while District Judge, in the case of Eustis Mining Co. v. Beer, Sondheimer & Co. Inc. (District Court Southern Dist. New York, 1917), 239 Fed. Rep. 976, summed up the rule as to admitting such evidence with these words:

"Yet, as all language will bear some different meanings, some evidence is always admissible; the line of exclusion depends on how far the words will stretch, and how alien is the intent they are asked to include."

In **O. Jur., Vol. 9, page 408, Sec. 183**, it is said:

"In construing a contract consideration should be given to all the circumstances under which the contract was made. That construction and effect should be given which shall best accord with the apparent intention of the parties as manifested by its terms taken in connection with the subject matter to which it relates and the circumstances accompanying the whole transaction."

In **Merchants National Bank v. Cole, 83 Oh St 50, 93 N. E. 465**, it is said on page 59:

"In such cases the instrument is to be construed in the light of the surrounding circumstances, but this does not mean as some cases would seem to indicate, that the written instrument is to be supplanted by a new contract evolved by the court from the parol evidence. Attention should be given to what is meant by surrounding circumstances and it should be remembered that they may not be used to contradict or vary the terms of the instrument. In **The Cambria Iron Co. v. Kenyes, et al, 56 Oh St 501**, it is held: 'In construing a contract of guaranty, the object should be to ascertain the intention of the parties; and as **in construing all contracts** the words employed by the parties should be construed in the light afforded by the circumstances surrounding them at the time it was made.' "

The first syllabus in **Norfolk & Chesapeake Coal Co. v. John, Trading as Citizens Coal Syndicate, 18 Oh Ap 512**, reads:

"Parol evidence may not be introduced to vary, modify or contradict the provisions of a written contract, where the language is clear and unambiguous, but parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intentions of the parties and properly construing the writing."

In **Monnett v. Monnett, Admr.,** 46 Oh St 30, 17 N. E. 659, it is said on page 35.

"Though the rules of evidence exclude oral testimony to contradict or vary the terms of written agreements, they permit proof of the circumstances under which they were made, the surroundings of the parties, their relations to each other, and to the subject matter of the contract, to enable the court called upon to interpret them, to put themselves in the place of the parties, with all the information possessed by them, the better to understand the terms employed in the contract, arrive at the intention of the parties, and give effect to the agreement."

The testimony in the record in the instant case together with the Lease admitted by the trial court are not alien to the written agreement under consideration. The evidence goes no further than the proper application of the written instrument to the subject matter of the contract.

The record would indicate that the trial court in the admission of much of the parol evidence labored under the impression that the contract before us is ambiguous. While we do not so hold, being of the opinion that the contract itself justifies the construction of the trial court, yet none of the parol testimony violates the rules hereinabove laid down. Therefore, this claim of error is without merit.

Plaintiff urges that the failure of Bond to approve the contract did not impair or defeat his contractual right to construct the building but merely changed the formula determining his compensation. He contends that the phrase in the last sentence of Section (b) of Article III reading

"and provided further, anything in this Contract to the contrary notwithstanding, if this Contract is not approved by Bond, then the contractor's fee shall not exceed five percent (5%) of the cost as defined and restricted in Section 2 of this Article of the work performed by the contractor hereunder" is merely a limitation upon the stipulated fee of $25,000.00, which was to be paid in the event Bond approved the contract. That this phrase together with the first sentence in Section 2 of Article III reading,

"For the purpose of determining the cost of the work performed by the Contractor hereunder, the following items shall be included:"
indicate clearly that because the words "work performed by the contractor hereunder" are used in both sections the parties intended that plaintiff should construct the building in any event. We cannot so construe the contract. Until Bond had approved the contract the only work plaintiff was au-

thorized to do was with regard to the foundation and for this work he was paid the cost of the materials and labor, plus five percent, as defined and restricted in Section 2 of Article III. This section, in our opinion, cannot be stretched beyond the measurement of fixing the five percent plaintiff was to receive not to exceed $10,000.00 in addition to the stipulated fee of $25,000.00. To hold that without the approval of Bond, plaintiff was entitled to construct the New Building and be paid under Section 2, is to re-write the provisions of the contract hereinabove quoted.

No doubt, both parties expected Bond's approval of their agreement. And when it was forthcoming that the plaintiff would construct the building. They made provisions for his compensation in such event fixing it at not more than $35,-000.00. They set forth specifically how that part of the compensation represented by the five percent was to be calculated. Under the record neither party contemplated that without Bond's approval plaintiff would erect the building and receive therefor a possible compensation in excess of the maximum amount fixed in the contract.

There is no error in the record prejudicial to appellant.

None of the assignments of error are well made and the judgment must be affirmed.

Judgment affirmed. Exceptions noted.

HUNSICKER, PJ, DOYLE, J, concur.